[Crim. No. 5406.   First Dist., Div. Two.   Dec. 21, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE H. MARTIN, Defendant and Appellant.

Dixon & White and Clinton W. White for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and John T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

TAYLOR, J.—Appellant, George H. Martin, and his co-defendant, McKinley Lomack, were jointly charged by information with possession of heroin (Health & Saf. Code, § 11500) and possession of heroin for sale (Health & Saf. Code, § 11500.5). A joint jury trial resulted in verdicts of guilty as charged. On this appeal from the judgment of conviction entered on the verdict, appellant argues that the court erred in allowing the prosecution to impeach Lomack by an oral statement obtained in violation of Lomack's rights under *Escobedo* v. *Illinois*, 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], as well as in permitting certain cross-examination of appellant, and in the admission of expert testimony.

As no contentions are raised concerning the sufficiency of the evidence to support the judgment of conviction, a brief summary of the pertinent facts will suffice. About 11 a.m. on November 13, 1964, several officers of the Oakland Police Department, and Agent Woishnis of the State Bureau of Narcotics Enforcement, began a surveillance of appellant's residence in Oakland, and noted a white Ford Mustang parked in the area. About 11:15 a.m., a Buick drove up and the driver, one Edward Hamilton, entered appellant's house. Shortly thereafter, Hamilton and appellant left the house. Appellant entered the Mustang and Hamilton returned to his Buick. The Mustang departed, followed by the Buick. Both were followed by the vehicles containing the officers.

The Buick and Mustang stopped in the vicinity of San Pablo Avenue and Haskell Street where appellant parked the

Mustang and entered the Buick. Hamilton then drove the Buick and double parked in the area of Hollis and Folger Streets. Appellant and Hamilton left the car and approached a Quonset hut on Folger Street. Appellant looked into the window of this building, then rejoined Hamilton. They returned to the Buick, drove around the area and again double parked near the Quonset hut. This time, Hamilton approached the building, reached into some grass or weeds near a window and ran back to the Buick. Thereafter, Hamilton drove the Buick back to San Pablo and Haskell and appellant re-entered the Mustang.

Appellant, followed by the officers, drove the Mustang to an area near the intersection of 61st and Lowell Streets and parked. Appellant then emerged from the car, threw a shiny object into a bush and drove away. Immediately thereafter, Sergeant Hilliard and Agent Woishnis drove to the bush and noticed a shiny foil-wrapped package about 4 to 5 inches long and 2 inches around. They picked up the package, opened it and found a small brown bag containing seven toy balloons. They removed two of the balloons. They dusted the rest of the balloons, the bag and tin foil with fluorescent powder, reconstructed the package and put it back in the place at the base of the bush where they had found it.

Hilliard took the two balloons to police headquarters for a chemical test and concluded that their brown crystalline contents were a narcotic. Thereafter, Hilliard signed a complaint against appellant, filed it, and obtained an arrest warrant. Hilliard then returned to 61st and Lowell where Woishnis and the others continued their surveillance and gave the warrant to Woishnis who was in a panel truck. The other officers were in a rented house trailer overlooking the bush and the package.

About 7:40 p.m., appellant, driving the white Mustang and accompanied by Lomack, returned to the area. Appellant pointed to the bush. Lomack left the Mustang, walked over to the bush, reached into it and walked back toward the Mustang. As Lomack was apprehended by Officer Alves, the foil object dropped from his hand. Meanwhile, Officer Schwedhelm entered the Mustang and apprehended appellant, served him with the warrant and ordered him out of the vehicle with his hands in view and his mouth open. As appellant got out of the car, Woishnis discovered a balloon on the ground near the car door. A search of appellant revealed another balloon in his jacket pocket. On subsequent examination, all seven of the balloons in the foil package were found to contain heroin, as did the two balloons found at the time of appellant's arrest.

Appellant testified in his own behalf and admitted being with Lomack at the pool hall on the date in question. About 7:30 p.m., appellant received a telephone call from Hamilton and was told to go to 61st and Market Streets and pick up a package of marijuana in a bush near a house trailer. Appellant and Lomack went to the spot and were apprehended. Appellant denied being in that location prior to 7:30 p.m. that evening.

Lomack testified that he was with appellant at the pool hall when appellant agreed to give him a ride to a bus stop. On the way, appellant stopped by the bush and asked him to pick up a package. He did so and was apprehended. He never told any officer that he had called appellant that day for the purpose of purchasing heroin. He gave conflicting testimony as to whether he had been informed of his right to counsel and to remain silent before giving a statement to the officers.

On rebuttal, the prosecution called Sergeant Hilliard, who testified that Lomack, after having been advised of his rights, orally stated at the police station that he had phoned appellant for the purpose of buying a spoon of heroin from him. This testimony was received only against Lomack for the purpose of impeachment and the jury was cautioned to disregard it in relation to appellant.

The major contention on appeal is that the court erred in allowing the impeachment of Lomack by a statement to the police obtained in violation of Lomack's rights under *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and should have ordered a separate trial for appellant. It should be noted that there was ample evidence that Lomack had been properly informed of his rights under *Dorado* and had knowingly waived them.

But appellant relies on *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], which abrogated the prior rule approving joint trials under section 1098 of the Penal Code, where the prosecution introduced a confession obtained from one defendant implicating a codefendant as well as himself. Under the circumstances of that case, the court (at pp. 526-527) held that the confession, if improperly obtained, was incurably prejudicial to the nondeclaring defendant. It also pointed out that even if the declarant had been informed of his rights under *People* v. *Dorado* and had knowingly waived them and the declaration was therefore admissible, the codefendant was nevertheless entitled to move for a separate trial.

420

The court said at pages 530-531: "When the prosecution proposes to introduce into evidence an extrajudicial statement of one defendant that implicates a codefendant, the trial court must adopt one of the following procedures: (1) It can permit a joint trial if all parts of the extrajudicial statements implicating any codefendants can be and are effectively deleted without prejudice to the declarant. By effective deletions, we mean not only direct and indirect identifications of codefendants but any statements that could be employed against nondeclarant codefendants once their identity is otherwise established. (2) It can grant a severance of trials if the prosecution insists that it must use the extrajudicial statements and it appears that effective deletions cannot be made. (3) If the prosecution has successfully resisted a motion for severance and thereafter offers an extrajudicial statement implicating a codefendant, the trial court must exclude it if effective deletions are not possible."

We need not, however, discuss the application of these rules to the instant case, as *Aranda* clearly indicates that the changes in the law applicable to section 1098 are not constitutionally compelled but are "judicially declared rules of practice" implementing the statute. ■ Accordingly, the *Aranda* rule has no retroactive effect but applies only to cases that had not reached trial by November 12, 1965, the date upon which *Aranda* was filed (*People* v. *Haynes*, 244 Cal. App.2d 579 [53 Cal.Rptr. 530]; *People* v. *Williams*, 239 Cal. App.2d 42, 45-46 [48 Cal.Rptr. 421]). As the instant case was tried prior to *Aranda*, the trial court did not abuse its discretion in refusing to grant a separate trial under the procedure then applicable (*People* v. *Haynes, supra*).

Appellant next contends that the trial court erred in permitting Sergeant Hilliard to testify that in his opinion the seven toy balloons originally found in the foil package represented an amount of heroin possessed for sale. There is no merit in this contention. ■ The ultimate issue for the jury was whether appellant knowingly possessed the heroin for sale and Sergeant Hilliard was duly qualified as an officer experienced in the narcotics field to give his opinion that it was held for that purpose (*People* v. *Aguilar*, 232 Cal.App.2d 173, 178 [42 Cal.Rptr. 666]). Such opinion testimony can be based on the amount of heroin involved and the type of packaging used (*People* v. *King*, 60 Cal.2d 308, 310 [32 Cal.Rptr. 825, 384 P.2d 153]; *People* v. *Aguilar, supra*; *People* v. *Villanueva*, 220 Cal.App.2d 443 [33 Cal.Rptr. 811]). ■ Cali-

fornia has followed the modern tendency in rejecting the rule that expert opinion is inadmissible merely because it coincides with an ultimate issue of fact (*People* v. *Cole,* 47 Cal.2d 99 [301 P.2d 854, 56 A.L.R.2d 1435]; Evid. Code, § 805).

Finally, appellant contends that it was error to permit the prosecution to cross-examine him over his objection on his employment prior to and at the time of the commission of the offense. In responding to the question, appellant testified to only intermittent employment and then volunteered that he played pool, dice and cards for money. This, appellant claims, reflected unfavorably on his character which he had not put in issue (Witkin, Cal. Evidence (1958) § 128).

In his defense, appellant admitted that he had gone to a certain location with codefendant Lomack to pick up a package of marijuana but by his plea denied any intent to sell narcotics. Thus, appellant placed the motive for his conduct squarely in issue and for the determination of this issue, the jury had to rely primarily on circumstantial evidence. It has been held that evidence of defendant's financial situation at the time of the offense is admissible to show motive where circumstantial evidence is largely relied upon for conviction (*People* v. *Williams,* 193 Cal.App.2d 394, 399 [14 Cal.Rptr. 279]; *People* v. *Richards,* 74 Cal.App.2d 279 [168 P.2d 435]).

Here, defendant's employment record was pertinent as it related to his financial need to engage in the illegal sale. It was for the jury to determine whether his pecuniary situation tended to directly connect him with the commission of the crime or to disclose the motive for its commission (*People* v. *Bigelow,* 165 Cal.App.2d 407, 418 [332 P.2d 162]). As Justice Bray stated in *People* v. *Gorgol,* 122 Cal.App.2d 281 [265 P.2d 69], a robbery case: "While it is true that in our case defendant on direct examination gave no testimony of his financial condition, it was proper cross-examination to ask him concerning his intent and concerning any matters which would refute his claim that he had not asked the driver for money." (P. 304.) The fact that the questions might disclose information derogatory to appellant's character would not affect its pertinency nor constitute a valid objection to its admission (*People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924]; *People* v. *Burns,* 109 Cal.App.2d 524 [241 P.2d 308, 242 P.2d 9]). We conclude that the questions here asked were within the range of proper cross-examination.

In any event, the evidence of appellant's guilt was overwhelming and we are satisfied, after an examination of the

entire record, that it is not reasonably possible that a result more favorable to appellant would have been reached in the absence of the testimony elicited by the allegedly erroneous interrogation (Cal. Const., art. VI, § 4½ ; *People* v. *Jacobson,* 63 Cal.2d 319 [46 Cal.Rptr. 515, 405 P.2d 555]).

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.