[Crim. No. 9657. In Bank. Apr. 4, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN CHARLES, JR., et al., Defendants and Appellants.

Bertram H. Ross, under appointment by the Supreme Court, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, C. Anthony Collins and Walter R. Jones, Deputy Attorneys General for Plaintiff and Respondent.

TOBRINER, J.—In *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], we established rules governing the conduct of joint trials in which one defendant's extrajudicial statement implicates a codefendant. ■ We hold in the instant case that those rules are available to defendants whose judgments of conviction are still on appeal even though they were tried before the date of the *Aranda* decision, November 12, 1965.

The trial in this case began on May 28, 1964. On June 26, 1964, after finding both defendants guilty of armed robbery (Pen. Code, §§ 211, 211a), the trial court entered the judgments of conviction which defendants challenge in this appeal. These judgments were pending on direct review when we filed our decision in *Aranda,* and were not yet final on June 13, 1966, when the United States Supreme Court decided *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

Under *People* v. *Rollins* (1967) 65 Cal.2d 681 [56 Cal. Rptr. 293, 423 P.2d 221], the present case is governed by the principles set forth in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], but not by the additional rules enunciated in *Miranda*; under the holding we announce here, the case before us is also governed by the guidelines elaborated in *Aranda.* Applying *Escobedo, Dorado,* and *Aranda,* but not *Miranda,* we have concluded that the conviction of defendant Charles was proper but that the conviction of defendant Boddie cannot stand.[1]

I

An information charged the defendants jointly with the robbery of a liquor store in the south end of Los Angeles on January 19, 1964, and with three additional counts of armed robbery, subsequently dismissed in the interest of justice. The information further alleged that defendant Charles had sus-

---

[1]Both defendants originally advanced the doubtful proposition that their arrests were illegal, but even if that contention were correct, it would furnish no basis for reversing the instant convictions. (See *People* v. *Valenti* (1957) 49 Cal.2d 199, 203 [316 P.2d 633].)

tained three, and defendant Boddic two, prior felony convictions. Defendants waived trial by jury and submitted the case to the court upon the transcript of the preliminary examination. The court found that both defendants were guilty as charged, that only defendant Charles was armed, and that each defendant had suffered two prior felony convictions.

The transcript contained the testimony of the proprietor of the liquor store, identifying the defendants as the men who had robbed him, and the testimony of Officer Deiro of the Los Angeles Police Department, stating that both defendants had confessed during questioning at the police administration building in Los Angeles. According to Officer Deiro, each defendant supplied a detailed account of what he and his codefendant had done on all four of the robberies charged.

On its face, the record before us discloses a violation of the joint trial rules set forth in *People* v. *Aranda, supra,* 63 Cal. 2d at pages 530-531. Each confession implicated both defendants; accordingly, if *Aranda* applies, the trial judge should have determined whether all parts of each confession implicating the nondeclarant could be effectively deleted without prejudice to the declarant; if such deletions proved infeasible, he should have severed the trials or excluded the confessions. Initially, therefore, we must decide whether the *Aranda* rules govern appeals in cases which, like the one before us, reached trial before the date of *Aranda.*

## II

The rules outlined in *Aranda* were designed to alter a practice which we deemed unfair to defendants who were implicated by the out-of-court declarations of their codefendants. We recognized that the prevailing practice rested upon the unrealistic hypothesis that the finder of fact could consider such declarations in determining the guilt or innocence of the declarant but ignore them in deciding the guilt or innocence of a codefendant. Our ruling, however, did not stem from a belief that the former procedure created a grave risk of convicting innocent defendants, and we were careful to point out that the rules announced were at least not yet constitution-lly compelled. (*People* v. *Aranda, supra,* 63 Cal.2d at p. 530.) The purposes of *Aranda* thus do not require its application to convictions long since final. (Cf. *People* v. *Rollins, supra,* 65 Cal.2d 681, 685; *In re Lopez* (1965) 62 Cal.2d 368, 376-378 [42 Cal.Rptr. 188, 398 P.2d 380].)

Moreover, as we said in rejecting retroactivity for *Esco-*

*bedo,* ''Unlimited retroactive application . . . would result in the reconsideration of countless cases that were correctly decided under the law [then] in force . . . ; in many cases witnesses and evidence would no longer be available . . . . To require a general release of prisoners of undoubted guilt would be to cripple the orderly administration of the criminal laws.'' (*In re Lopez, supra,* 62 Cal.2d at p. 381; see also *In re Gaines* (1965) 63 Cal.2d 234, 237-240 [45 Cal.Rptr. 865, 404 P.2d 473].)

Although we therefore conclude that violations of the procedural requirements set forth in *Aranda* may not be challenged on collateral attack, we nonetheless hold that cases still pending on direct review should be adjudicated in accord with the principles which *Aranda* established. In reaching this conclusion, we adhere to the settled practice both of this court and of the United States Supreme Court.

The historic pattern of applying the court's current expression of a basic principle to cases pending on appeal finds numerous classic illustrations. Thus, for example, we applied the exclusionary rule of *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], to a case ''tried before the decision in *People* v. *Cahan* . . . at a time when the trial court was bound by the earlier decisions of this court that illegally obtained evidence was admissible'' (*People* v. *Kitchens* (1956) 46 Cal.2d 260, 262 [294 P.2d 17]) ; yet we have held that a defendant may not collaterally attack a final judgment upon *Cahan* grounds.[2] Similarly, having held in *People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1], that the defendant in a criminal case can compel production of material evidence in the possession of the prosecution, we applied the rule of discovery thus established to a case pending on appeal on the date *Riser* was decided. (*People* v. *Carter* (1957) 48 Cal.2d 737, 752-753, 759 [312 P.2d 665].)

The United States Supreme Court adopted a similar approach in *Linkletter* v. *Walker* (1965) 381 U.S. 618 [14 L.Ed.2d 601, 85 S.Ct. 1731], when it decided that *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933], should be denied general retroactive operation but held *Mapp* nonetheless applicable to all cases which had not reached final judgment prior to the date of the *Mapp*

[2]See *In re Lessard* (1965) 62 Cal.2d 497, 503 [42 Cal.Rptr. 583, 399 P.2d 39], adhering to the concurring opinion of Traynor, J., in *In re Harris* (1961) 56 Cal.2d 879, 881-886 [16 Cal.Rptr. 889, 366 P.2d 305]; *In re Sterling* (1965) 63 Cal.2d 486 [47 Cal.Rptr. 205, 407 P.2d 5].

decision. Again, in *Tehan* v. *Shott* (1966) 382 U.S. 406 [15 L.Ed.2d 453, 86 S.Ct. 459], the United States Supreme Court held that *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed. 2d 106, 85 S.Ct. 1229], although unavailable to challenge previously final judgments, should nonetheless govern all cases pending on appeal when *Griffin* was decided. In the same vein, the court applied its ruling in *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199], to cases pending on appeal on the date of the *Massiah* decision. (See, e.g., *McLeod* v. *Ohio* (1965) 381 U.S. 356 [14 L.E.d.2d 682, 85 S.Ct. 1556] (per curiam).)

 Earlier this year, we reaffirmed the principle implicit in all of these decisions and concluded that convictions should ordinarily be tested on appeal under the law then applicable, not the law prevailing at the time of trial. (*People* v. *Rollins, supra,* 65 Cal.2d 681, 685 fn. 3, 688 & fn. 7, 691.) We see no reason to depart today from this basic postulate of appellate review.[3]

Those Courts of Appeal which have decided to limit the application of *Aranda* to post-*Aranda* trials have done so partly because we described the principles there elaborated "not as constitutionally compelled, but as judicially declared rules of practice to implement [Pen. Code] section 1098" (*People* v. *Aranda, supra,* 63 Cal.2d at p. 530),[4] and partly because the United States Supreme Court employed a trial-date limitation for *Escobedo* and *Miranda* in *Johnson* v. *New Jersey* (1966) 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772].[5] We find neither reason persuasive.

Our statement that the *Aranda* rules were not constitutionally compelled does not bear upon the applicability of

---

[3]See generally, Mishkin, *The Supreme Court, 1964 Term—Foreword: The High Court, The Great Writ, and the Due Process of Time and Law* (1965) 79 Harv.L.Rev. 56, 72, 77-79. Even newly enacted legislation admittedly inapplicable to previously final judgments has been given judicial application to cases pending on direct review. (See, e.g., *Blow* v. *North Carolina* (1965) 379 U.S. 684 [13 L.Ed.2d 603, 85 S.Ct. 635] (per curiam); *Hamm* v. *City of Rock Hill* (1964) 379 U.S. 306 [13 L.Ed.2d 300, 85 S.Ct. 384]; *Bell* v. *Maryland* (1964) 378 U.S. 226 [12 L.Ed.2d 822, 84 S.Ct. 1814]; *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948]; *People* v. *One 1953 Buick* (1962) 57 Cal.2d 358 [19 Cal.Rptr. 488, 369 P.2d 16].)

[4]See, e.g., *People* v. *Williams* (1965) 239 Cal.App.2d 42, 45-46 [48 Cal. Rptr. 421]; *People* v. *Martin* (1966) 247 Cal.App.2d 416, 420 [55 Cal.Rptr. 629]; *People* v. *Perrin* (1967) 247 Cal.App.2d 838, 845 [55 Cal.Rptr. 847].

[5]See, e.g., *People* v. *Haynes* (1966) 244 Cal.App.2d 579, 583-584 [53 Cal.Rptr. 530].

those rules on appeal but only upon their automatic availability for collateral attack. Moreover, the fact that *Aranda* worked a change which might be characterized as "procedural" furnishes no reason to limit that change to purely prospective operation. In this area of the law, as in others,[6] substance and procedure are so interwoven that their attempted segregation into clean-cut categories becomes meaningless; here, as elsewhere, the hoary dichotomy between the substantive and the procedural cannot serve as a talismanic solution to the retroactivity problem. We have previously decided pending cases under newly announced rules no less "procedural" than those elaborated in *Aranda*;[7] we see no reason to treat the *Aranda* rules differently, whatever labels might be used to describe them.

Nor does the decision in *Johnson* v. *New Jersey, supra,* 384 U.S. 719, support a departure in this case from the principles which ordinarily govern the effect of a basic change in the law pending appeal from a criminal conviction. Although the United States Supreme Court declined in *Johnson* to compel the application of *Escobedo* and *Miranda* to trials which began before those decisions were rendered, the *Johnson* opinion cannot be analyzed in a legal vacuum. In rejecting the more traditional approach which it had followed in *Tehan* v. *Shott, supra,* 382 U.S. 406, *Linkletter* v. *Walker, supra,* 381 U.S. 618, and *McLeod* v. *Ohio, supra,* 381 U.S. 356, the court adopted a technique it deemed appropriate in view of the specific rules newly announced in *Miranda* and the fundamental "disagreements among other courts concerning the implications of *Escobedo*." (*Johnson* v. *New Jersey, supra,* 384 U.S. 719, 734 [16 L.Ed.2d 882, 893].) Given the special

---

[6] "The line between 'substance' and 'procedure' shifts as the legal context changes." (*Hanna* v. *Plumer* (1965) 380 U.S. 460, 471 [14 L.Ed.2d 8, 16, 85 S.Ct. 1136].) (See, e.g., *Cohen* v. *Beneficial etc. Loan Corp.* (1949) 337 U.S. 541, 559 [93 L.Ed. 1528, 1543, 69 S.Ct. 1221] (Rutledge, J., dissenting); *Sampson* v. *Channell* (1st Cir. 1940) 110 F.2d 754 [128 A.L.R. 394] (Magruder, J.); *Grant* v. *McAuliffe* (1953) 41 Cal.2d 859, 865 [264 P.2d 944, 42 A.L.R.2d 1162] (Traynor, J.); cf. *People* v. *One 1953 Buick, supra,* 57 Cal.2d 358, 365; see also Cook, The Logical and Legal Bases of the Conflict of Laws (1942) 154-193; Cavers, The Choice-of-Law Process (1966) 279-289.)

[7] See, e.g., *People* v. *Schader* (1965) 62 Cal.2d 716, 727-728 [44 Cal. Rptr. 193, 401 P.2d 665], reversing a conviction in part because of the trial judge's failure to comply with the procedural requirements established in *Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205]; see also *People* v. *Carter, supra,* 48 Cal.2d 737, 752-753, reversing a conviction because, *inter alia,* the trial court did not follow the discovery procedure made available by *People* v. *Riser, supra,* 47 Cal.2d 566, 586.

problems which required resolution in *Johnson*,[8] we doubt that the court's holding in that case should be extended beyond the unique context in which it arose.[9]

Although we adhered to the specific conclusion of *Johnson* that the rules set forth in *Miranda* should be limited to post-*Miranda* trials (*People* v. *Rollins, supra,* 65 Cal.2d 681, 686-687), we did so largely because we believed that *Escobedo* and *Dorado* had encouraged law enforcement authorities to adopt "'devices which, although below the constitutional minimum [as defined by *Miranda*], were not intentional evasions of the requirements of the privilege [against self-incrimination].'" (*People* v. *Rollins, supra,* 65 Cal.2d 681, 686, quoting *Johnson* v. *New Jersey, supra,* 384 U.S. 719, 733 [16 L.Ed.2d 882, 892].) We were reluctant to require "retrials of pre-*Miranda* cases in which prosecutors and trial courts carefully heeded the teachings of *Escobedo* and of *Dorado* but failed to anticipate the additional requirements set forth in *Miranda*." (*People* v. *Rollins, supra,* 65 Cal.2d 681, 687.) No such considerations are controlling here. Accordingly, we hold that failure to follow the procedure we set forth in *Aranda* may be raised on appeal even by defendants whose trials took place before *Aranda* was decided.

### III

█ As we have previously indicated, however, failure to adhere to the *Aranda* procedure constitutes reversible error only if it causes prejudice.[10] Although we find no such prejudice here as to either defendant, the record fails to dispel Boddie's contention that his confession, unlike that of Charles, was obtained in violation of *Escobedo* and *Dorado*. As we later explain, the introduction of Boddie's inadmissible confession constituted error as to both defendants; that error

---

[8]See, e.g., Schwartz, *Retroactivity, Reliability, and Due Process: A Reply to Professor Mishkin* (1966) 33 U.Chi.L.Rev. 719, 757-768.

[9]See, e.g., separate opinion of Warren, C. J., joined by Fortas, J., in *Spencer* v. *Texas* (1967) 385 U.S. 554, 569 [17 L.Ed.2d 606, 617, 87 S.Ct. 648, 656] (concurring in part and dissenting in part); see also, *The Supreme Court, 1965 Term* (1966) 80 Harv.L.Rev. 91, 136-141.

[10]So long as the *Aranda* rules remain solely matters of state practice (see *People* v. *Aranda, supra,* 63 Cal.2d at pp. 529-530; cf. *Spencer* v. *Texas, supra,* 385 U.S. 554 [17 L.Ed.2d 606, 87 S.Ct. 648]), the relevant standards of prejudicial error stem not from federal law (see *Chapman* v. *California* (1967) 386 U.S. 18, 21 [17 L.Ed.2d 705, 708, 87 S.Ct. 824, 826]) but from our own Constitution. (Cal. Const., art. VI, § 13; █ see *People* v. *Aranda, supra,* 63 Cal.2d at pp. 526-527; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

was automatically prejudicial as to Boddie but not as to Charles. We have therefore concluded that the conviction of Boddie, but not that of Charles, must be reversed.

Turning first to the basic *Aranda* violation, we consider crucial the fact that each defendant's case was completely shattered by his own detailed confession,[11] corroborated by the eyewitness testimony of the robbery victim. In this setting, the fact that each defendant was also implicated by his codefendant's confession cannot realistically have contributed to either conviction. Although the present case was tried by a judge sitting without a jury, we need not decide whether that fact alone would here preclude the requisite showing of prejudice,[12] since we find no reasonable probability in this case that even a jury would have returned a more favorable verdict for either defendant if, as required by *Aranda*, the defendants had been tried separately or each confession had been ''edited'' to include no references damaging to the nondeclarant. (*People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

[11]Cf. *People* v. *Schader, supra,* 62 Cal.2d 716, 728-731; *People* v. *Dorado, supra,* 62 Cal.2d 338, 356; *People* v. *Parham* (1963) 60 Cal.2d 378, 385 [33 Cal.Rptr. 497, 384 P.2d 1001].

[12]Although an *Aranda* violation is *less likely to prove prejudicial* in a trial by judge than in a jury trial (see *People* v. *Talley* (1967) 65 Cal.2d 830, 840 [56 Cal.Rptr. 492, 423 P.2d 564]), the procedure required by *Aranda* operates *prior* to trial and applies whether or not a jury is subsequently waived. (Cf. *People* v. *Santo* (1954) 43 Cal.2d 319, 332 [18] [273 P.2d 249]; see Note (1965) 74 Yale L.J. 553, 564-565 & fns. 59-60.) Nothing in the statutory provisions governing consolidation and severance (Pen. Code, §§ 954, 1098), and nothing in *Aranda*, suggests a bifurcated set of rules, one for defendants who demand juries and another for those who do not.

We have long recognized that judges are *better* able than juries to limit their consideration of evidence to the purposes for which it is admissible (see, e.g., *In re Hernandez* (1966) 64 Cal.2d 850, 851 [51 Cal. Rptr. 915, 415 P.2d 803]), but we see no reason to hold that basic procedural and evidentiary rules designed to minimize the likelihood of unfairness to persons accused of crime should be completely ignored in nonjury trials. (See generally Note, *Improper Evidence in Nonjury Trials: Basis for Reversal?* (1965) 79 Harv.L.Rev. 407, 408-410, 411 fn. 19, 413 fn. 25, 414-415; see also *People* v. *Andrews* (1958) 165 Cal. App.2d 626, 636 [332 P.2d 408], holding a joint trial permissible under the circumstances but placing no reliance on the fact that the trial was by a judge rather than a jury.)

Some types of evidence are so difficult to disregard completely (see, e.g., *Jackson* v. *Denno, supra,* 378 U.S. 368; *People* v. *Schader, supra,* 62 Cal.2d 716, 727-728) or to consider for one purpose but ignore for another (see, e.g., *People* v. *Aranda, supra,* 63 Cal.2d at pp. 525-526, 528-529), that curative instructions are deemed incapable of overcoming the harm done by exposing a jury to such evidence. The hearing of evidence of this kind, by judges as well as by juries, should be restricted to the essential minimum.

Thus, although there will rarely be serious disputes as to whether or

## IV

■ Upon this record, however, we cannot hold that Boddie's confession was obtained in compliance with *Escobedo* and *Dorado.* Because Boddie had been arrested prior to questioning at the police administration building, "the investigation [was] no longer a general inquiry into an unsolved crime but [had] begun to focus on a particular suspect"; moreover, Boddie had clearly "been taken into police custody. . . ." (*Escobedo* v. *Illinois, supra,* 378 U.S. 478, 490-491 [12 L.Ed. 2d 977, 985-986] ; *People* v. *Stewart* (1965) 62 Cal.2d 571, 577-578 [43 Cal.Rptr. 201, 400 P.2d 97], affd. *sub nom. Miranda* v. *Arizona, supra,* 384 U.S. 436, 497-499 [16 L.Ed.2d 694, 736-737, 86 S.Ct. 1602, 1639-1640, 10 A.L.R.3d 974] ; *People* v. *Dorado, supra,* 62 Cal.2d 338, 353.) Since "the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and [since] no evidence establishes that he had waived these rights" (*People* v. *Dorado, supra,* 62 Cal.2d 338, 353-354), "no knowing and intelligent waiver of any constitutional right can be said to have occurred under the circumstances of this case." (*Escobedo* v. *Illinois, supra,* 378 U.S. 478, 490 fn. 14 [12 L.Ed.2d 977, 986] ; *People* v. *Stewart, supra,* 62 Cal.2d 571, 581, affd. *sub nom. Miranda* v. *Arizona, supra,* 384 U.S. 436, 497-499 [16 L.Ed.2d 694, 736-737, 86 S.Ct. 1602, 1639-1640, 10 A.L.R. 3d 974] ; *People* v. *Dorado, supra,* 62 Cal.2d 338, 353.)

The record fails to show that Boddie's confession did not result from "a process of interrogations that lends itself to eliciting incriminating statements" (*Escobedo* v. *Illinois,*

not all implicating portions of a codefendant's statement can be effectively deleted, close cases will occasionally arise in which a judge must hear some portion of a challenged statement in order to decide whether the proposed deletions will suffice or whether separate trials must be ordered if the statement is to be used at all. In such situations, the judge scheduled to try the case may request that another judge be assigned the pretrial hearing (see Cal. Rules of Court, rule 533; cf. *Jackson* v. *Denno, supra,* 378 U.S. 368, 391 fn. 19 [12 L.Ed.2d 908, 924]); at the very least, the trial judge can avoid hearing the statement in all its "distracting . . . and mind-poisoning detail." (Note, *op. cit. supra,* 79 Harv.L.Rev. 407, 410.)

Recognizing in *Aranda* that permitting joint trials in all cases would entail less cost and greater convenience to witnesses and to the state, we nonetheless concluded that such practical considerations could not prevail when they conflicted with the need to insure fair trials and to protect fundamental rights. (*People* v. *Aranda, supra,* 63 Cal.2d at p. 530 fn. 9.) Whether the trial is by jury or by judge, that analysis remains sound. Indeed, an attempt to economize by limiting *Aranda* to jury trials might well prove self-defeating, since such a limitation would simply create an artificial incentive for codefendants to insist upon trial by jury as the only means of obtaining the benefit of the *Aranda* rules.

*supra*, 378 U.S. 478, 491 [12 L.Ed.2d 977, 986]; *People* v. *Dorado, supra*, 62 Cal.2d 338, 353). In this connection, the record discloses that the police arrested Boddie for robbery; that officers spoke with him at the police administration building at 3 a.m. and tape-recorded the ensuing conversation; that he initially denied committing any robberies; that, "after a short conversation," he finally became more cooperative; and that, during a series of highly specific questions, he "indicated that he and [Charles] had committed [the] robbery" in question.

The record affords no account of the content of the "short conversation" which overcame Boddie's initial reluctance to incriminate himself, and it furnishes only a partial and fragmentary account of the nature and extent of the questioning which immediately preceded Boddie's ultimate decision to confess.[13]

In this situation, *People* v. *Luker* (1965) 63 Cal.2d 464 [47 Cal.Rptr. 209, 407 P.2d 9], and *People* v. *Stockman* (1965) 63 Cal.2d 494, [47 Cal.Rptr. 365, 407 P.2d 277], hold that the

---

[13]The only witness to testify in this regard did not purport to provide a complete description of the interrogation and, since the case was tried prior to *Escobedo* and *Dorado*, neither the prosecution nor the defense attempted to present additional evidence on this issue. (Cf. *People* v. *Green* (1965) 63 Cal.2d 561, 565 [47 Cal.Rptr. 477, 407 P.2d 653].) The record discloses the following testimony regarding the questioning of defendant Boddie:

"Q. Now, officer, would you relate that conversation that you had with defendant Boddie?

"A. Yes, sir.

"I knew him as Ollie Hernandez—Fernandez. He stated that's what his name was. And we discussed numerous robberies that occurred in the County of Los Angeles between the 11th of January and the 22nd of January, which he denied.

"He then stated after a short conversation that he might just as well tell me who he was because it's going to come out in the end anyway. He says, 'My name really isn't Fernandez. It's Oliver Martin Boddie. . . .'

"THE WITNESS: In substance he indicated that he wanted to clear up any robberies that he was involved in. So I asked him how many robberies had he participated in. And he said four.

"I said, 'Which was the first one you participated in?'

"He says, 'Sometime early in January, a market at West Washington and Union Avenue.'

"I stated to him, 'Well, could it have been on the 11th of January?'

"He stated yes.

"I asked him, 'What happened?'

"He said that he and defendant [Charles] entered the market and pretended to shop, and as the people left, they committed the robbery.

"I asked him what he used for a weapon, if any. He stated he used a .25 automatic, blue steel automatic.

"I showed him a .25 blue steel automatic, and he stated that was the same one that he had used.

prosecution bears the burden of proving that the statement in question was not the fruit of a forbidden interrogation.[14] The prosecution has not discharged that burden here. Surely we cannot dissect the interrogation of defendant Boddie in order to declare that it began with a series of purely investigatory questions by the police and ended with a sequence of entirely spontaneous statements by the accused. We face a hiatus in the record; our decisions forbid us to fill it with our purely speculative surmises. Nor can we properly engage in legal surgery to select from this incomplete account excerpts which might be viewed in isolation as fragments of a "spontaneous confession" of Boddie's guilt.

We therefore conclude that, so far as the record shows, Boddie's conviction rested upon a confession obtained in violation of *Escobedo* and *Dorado*; since the erroneous admission of a confession is necessarily prejudicial (*People* v. *Schader, supra,* 62 Cal.2d 716, 728-731; *People* v. *Dorado, supra,* 62 Cal.2d 338, 356; *People* v. *Parham, supra,* 60 Cal.2d 378, 385; see *Chapman* v. *California, supra,* 386 U.S. 18, 23 & fn. 8

---

"I asked him if it was loaded. He said, 'Yes, it was.'

"I asked him if [Charles] had a gun. He stated no, that he carried the gun on all four jobs that he was on with [Charles].

"He said the next robbery that he committed with [Charles] was at a liquor store at Seventh Street near Alvarado Street.

"I showed him the report of the Monarch Liquors. He stated that that was the one he and [Charles] pulled.

"He indicated the next robbery that he pulled with [Charles] was a liquor store on Third Street, near Berendo.

"I showed him the report, and he indicated that was the robbery that he and [Charles] pulled.

"He indicated that they pulled a robbery in the south end of town, out near Inglewood, where they took a gun from the proprietor.

"I showed him the report from that particular robbery, and he indicated that he and [Charles] had committed that robbery and took that gun."

[14]In *Luker* we said: "When a record . . . reveals that [a] defendant has been arrested [and has thereafter] been questioned about the offense which occasioned the arrest, and [when] no evidence indicates that the statements are in the nature of spontaneous disclosures, we do not presume that . . . a process of interrogations [designed to elicit incriminating statements] has not been undertaken." (*People* v. *Luker, supra,* 63 Cal.2d 464, 473-474.) Again, in *Stockman,* we said: "It may reasonably be assumed . . . that an interrogation which does elicit incriminating statements was conducted by the police for that purpose, at least in part, and . . . the burden should [thus] be on the prosecution to show that [such] statements were the result of something other than a 'process of interrogations that lends itself to eliciting incriminating statements. . . .'" (*People* v. *Stockman, supra,* 63 Cal.2d 494, 498-499.) (See also *People* v. *Talley, supra,* 65 Cal.2d 830, 839-840; cf. *People* v. *Davis, ante,* p. 175 [57 Cal.Rptr. 130, 424 P.2d 682].)

[17 L.Ed.2d 705, 710, 87 S.Ct. 824, 827-828] (dictum)), [15]
Boddie's conviction must be reversed.

## V

Turning next to the case of defendant Charles, we set forth here our reasons for finding that his confession was lawfully obtained and properly introduced against him. We then explain why we have concluded that the use of Boddie's inadmissible confession nonetheless infected Charles' trial with error, but that such error was harmless.

■ With respect to Charles' own statement, we have decided that the prosecution successfully established its admissibility by demonstrating that it was an "unsolicited, spontaneous confession. . . ." (*People* v. *Dorado, supra,* 62 Cal.2d 338, 354; cf. *Miranda* v. *Arizona, supra,* 384 U.S. 436, 478 [16 L.Ed.2d 694, 726].)

Defendant Charles was apprehended in Phoenix, Arizona. On the plane from Phoenix, Charles offered to "talk about the case," but the officer who was returning with him to Los Angeles suggested that he wait until the plane landed in California. At the police administration building in Los Angeles, Charles again offered to tell "about all the robberies that he was on." Even then, the officer conducted no interrogation; he simply said, "Go ahead," whereupon Charles proceeded to narrate the elements of the four robberies, volunteering a full confession of his participation in the crime of which he now stands convicted.[16] *Escobedo* and *Dorado* "were never intended to discourage a defendant from volunteering to the police his complicity in the perpetration of a crime nor to prohibit the police from receiving and acting upon such confessions." (*People* v. *Cotter, supra,* 63 Cal.2d 386, 393 [46 Cal.Rptr. 622, 405 P.2d 862], vacated on other grounds

[15]We note that no "multiple confessions" problem (see *People* v. *Jacobson* (1965) 63 Cal.2d 319, 330-331 [46 Cal.Rptr. 515, 405 P.2d 555]) arises here, since the evidence included just one confession by each defendant.

[16]The fact that Charles supplied some of the details of his statement in response to the officer's questions as to "what happened on [each] robbery" is irrelevant, since "the questioning was initiated by defendant, . . . the [defendant's] statement was volunteered in response to a neutral inquiry invited by defendant's own remarks; [and] the conduct of the police was neither intimidating nor accusatory, nor did it appear in any way designed to elicit incriminating statements . . . ." (*People* v. *Treloar* (1966) 64 Cal.2d 141, 147 [49 Cal.Rptr. 100, 410 P.2d 620].) These circumstances negate any suggestion that the officers employed "inquisitorial techniques in seeking to prove the charge against the accused out of his own mouth." (*People* v. *Cotter, supra,* 63 Cal.2d 386, 393, vacated on other grounds (1967) 386 U.S. 274 [18 L.Ed.2d 43, 87 S.Ct. 824].)

(1967) 386 U.S. 274 [18 L.Ed.2d 43, 87 S.Ct. 824].) The police did no more than accept and act upon such an unsolicited confession in the case of defendant Charles; his conviction thus accords fully with *Escobedo* and *Dorado*.

## VI

We note, however, that Charles' trial contained a clear violation of *Aranda*. We explain here the nature of that violation and the reasons for our conclusion that it constituted harmless error. Charles was of course implicated by Boddie's confession; since that confession should not have been admitted against Boddie, its use at the joint trial of both defendants gives rise to an *Aranda* infirmity in Charles' conviction entirely apart from the trial court's failure to employ the specific *procedure* required by our *Aranda* decision. The trial court was careful to state in this case that Boddie's confession would not be considered against Charles, but in *Aranda* we emphatically rejected "any assumption that error in admitting a confession that implicates both defendants is rendered harmless to the nonconfessing defendant by an instruction that it should not be considered against him." (*People* v. *Aranda, supra,* 63 Cal.2d at p. 526.) We reasoned that the "rule permitting joint trials in such cases [reflected] a compromise between the policies in favor of joint trials and the policies underlying the exclusion of hearsay declarations against one who did not make them." (*Ibid.*) When the confession implicating both defendants was not even admissible against the defendant from whom it had been elicited, however, we could see no further room for compromise: "The risk of prejudicing the nonconfessing defendant [could] no longer be justified by the need for introducing the confession against the one who made it." (*Ibid.*) Accordingly, we held that the introduction of a confession violative of *Escobedo* and *Dorado* and implicating a codefendant is not rendered harmless as to the latter by the trial court's admonition that the confession may be considered only against the declarant.

The use of Boddie's inadmissible confession thus infected Charles' trial with an *Aranda* error. As we have already explained, however, in light of the fact that the evidence properly admitted against Charles included his own amply corroborated confession, we find no reasonable probability that Charles would have received a more favorable verdict had Boddie's statement been excluded. Accordingly, we conclude

that this violation of *Aranda,* like that previously discussed, proved nonprejudicial in the present case.

In summary, we hold that all cases still pending on direct review are governed by the rules established in *Aranda* for the conduct of joint trials. ▪ Although we conclude that these rules were twice violated here, we find neither violation prejudicial since each defendant rendered a detailed and fully corroborated confession of his own guilt. Because the record fails to show that Boddie's confession was not elicited by methods held unconstitutional in the *Escobedo* and *Dorado* decisions, his conviction cannot stand. The prosecution has, however, sustained its burden of demonstrating that Charles' confession was obtained in full compliance with the standards established by those decisions; his conviction, therefore, need not be disturbed.

The judgment of conviction of defendant Charles is affirmed; that of defendant Boddie is reversed.

Traynor, C. J., and Sullivan, J., concurred.

PETERS, J.—I concur with everything said in the main opinion except with that portion that attempts to explain, justify and distinguish the majority rule adopted in *People* v. *Rollins,* 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221]. That case held that the rules adopted in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], as a matter of state policy, should be applied prospectively. The rules there involved were of constitutional dimensions and affected the defendant's right to a fair trial. In the present case, it is held that the rules announced in *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], have partial retroactivity so as to apply to pending appeals, even though the rules there announced are not of constitutional dimensions. The two cases are completely inconsistent. This case cannot be distinguished from the *Rollins* case. Everything said in the main opinion in support of making *Aranda* partially retroactive applies with even greater force to the contention that *Miranda* should apply to pending appeals. The main opinion expresses those reasons more eloquently and convincingly than I did in my dissent in the *Rollins* case (*supra,* 65 Cal.2d at p. 743). For this reason I am glad to concur in the main opinion, and to welcome my associates back to the adoption of what they themselves describe as "historic" and "settled" rules.

MOSK, J.—I concur.

The result reached by the majority in reversing the Boddie conviction is compelled by the clear *Dorado* violation.

I cannot agree, however, that we should apply *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], to cases tried before the decision was rendered, even though hopefully there may be few in number. To do so makes rare prescience a requisite in prosecutors and trial judges.

The Chief Justice emphasized in *Aranda* (at p. 530) that "the rules we now adopt are to be regarded, not as constitutionally compelled, but as judicially declared rules of practice to implement section 1098."

A rule of practice adopted by the Legislature would govern "from the date it takes effect and not before" (*People* v. *Righthouse* (1937) 10 Cal.2d 86, 88 [72 P.2d 867]). I find it difficult to accord greater sanctity to a judicially promulgated rule of practice.

BURKE, J.—I concur with the majority's view that a collateral attack may not be used to challenge violations of the procedural requirements set forth in *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], governing the conduct of joint trials in which one defendant's extrajudicial statement implicates a codefendant. I dissent, however, from the majority's conclusions (1) that those requirements apply to cases on appeal that were tried before the requirements were even announced and (2) that those requirements should be extended to cases of trials by a judge sitting without a jury.

The United States Supreme Court utilized a trial date limitation for new rules of constitutional dimensions enunciated in *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] (*Johnson* v. *New Jersey,* 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]), and we adopted the same limitation with respect to the *Miranda* rules (*People* v. *Rollins,* 65 Cal.2d 681, 683 [56 Cal.Rptr. 293, 423 P.2d 221]; see also *People* v. *Ryan,* 152 Cal. 364, 368-369 [92 P. 853]; Note 10 A.L.R.2d 1371, 1414-1415).[1] I believe

---

[1] In *People* v. *Rollins, supra,* 65 Cal.2d 681, 687-690, we rejected the trial date limitation with respect to the *Escobedo* rules in part because we had already applied in numerous cases a different limitation as to those rules and because, in the light of relevant prior case law, we found little force in the argument that there had been affirmative reliance on the pre-*Escobedo* cases by prosecuting officials. Neither such reason is applicable in the present case.

that we should likewise hold that the procedural requirements established in *Aranda*, ones not declared to be of constitutional dimensions, are applicable only to cases tried after the date of our decision in *Aranda*.

In *Rollins* (65 Cal.2d at pp. 686-687) we pointed out that "retroactive application [of *Miranda*], requiring retrials in countless cases, would needlessly burden the administration of justice" and that "the application of *Miranda* to trials beginning before June 13, 1966, would necessarily entail the reversal of some convictions in cases which came to trial after *Escobedo* and *Dorado*, and which complied fully with the rules announced in those decisions. The application of *Miranda* to reverse such convictions would upset the justifiable reliance of those who sought scrupulously to follow the rulings of this court and of the United States Supreme Court." We further declared that "We fully appreciate the difficulties which beset law enforcement agencies . . . ; we would compound those difficulties needlessly if we were to require retrials of pre-*Miranda* cases in which prosecutors and trial courts carefully heeded the teachings of *Escobedo* and *Dorado* but failed to anticipate the additional requirements set forth in *Miranda*. Under these circumstances, a due regard for the relationship between those who interpret the commands of the Constitution and those who must comply with such interpretations while combatting crime impels the limitations of *Miranda* to trials commencing after June 13, 1966, the date on which *Miranda* was decided."

In the instant case, as in *Rollins*, retroactive application of the new rules announced in *Aranda* would needlessly burden the administration of justice. Also, here, as in *Rollins*, the prosecutor and the court relied upon and scrupulously followed the then prevailing rules, but because the trial court failed to follow the then nonexistent procedural rules in *Aranda* the majority hold that the trial court erred—this, notwithstanding the belief "that the former procedure [did not create] a grave risk of convicting innocent defendants" and that the new rules in *Aranda* were not yet "constitutionally compelled."

The majority recognize that the purposes of *Aranda* do not require its application to convictions long since final. I submit that those purposes likewise do not compel its application to cases tried before our decision was rendered in *Aranda*.

In my opinion the Courts of Appeal in this state correctly concluded that the new procedural rules in *Aranda* should not

apply retroactively to cases tried before that decision. (*People* v. *Perrin,* 247 Cal.App.2d 838, 845 [55 Cal.Rptr. 847] ; *People* v. *Martin,* 247 Cal.App.2d 416, 420 [55 Cal.Rptr. 629] ; *People* v. *Haynes,* 244 Cal.2d 579, 583-584 [53 Cal.Rptr. 530] ; *People* v. *Williams,* 239 Cal.App.2d 42, 45-46 [48 Cal.Rptr. 421].)

I also believe that the rules of procedure enunciated in *Aranda* should not be extended to a case where the trial will not be by a jury but rather by a court sitting without a jury. In such a case pragmatic considerations of jury thinking are not involved (*People* v. *Talley,* 65 Cal.2d 830, 841 [56 Cal.Rptr. 492, 423 P.2d 564] ; *In re Hernandez,* 64 Cal.2d 850, 851 [51 Cal.Rptr. 915, 415 P.2d 803] ; *People* v. *Garcia,* 239 Cal.App.2d 58, 61 [48 Cal.Rptr. 305] ; *People* v. *Williams,* 239 Cal.App.2d 42, 44 [48 Cal.Rptr. 421]), and the burden on the victim of the crime, other witnesses, the prosecution and the courts is not outweighed by any danger of prejudice to the defendant from an extrajudicial accusatory statement of a codefendant. It is indeed anomalous to require a trial judge, who is going to try a case without a jury, to grant a severance or exclude an extrajudicial statement of a codefendant (where effective deletions are impossible) on the theory that the trial judge may be unable to disregard what he would recognize as merely a hearsay accusatory statement of the codefendant and at the same time presume, for example, that the judge will be able to disregard the defendant's own confession if the judge determines it to be inadmissible.

Finally, I concur in the affirmance of the judgment of conviction of Charles but dissent from the reversal of the judgment as to Boddie. I believe beyond a reasonable doubt that the error in admitting Boddie's confession was harmless. (Cal. Const., art. VI, § 13 ; ▮ *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].)

McComb, J., concurred.

Respondent's petition for a rehearing was denied May 4, 1967. McComb, J., and Burke, J., were of the opinion that the petition should be granted.