Filed 5/25/22  P. v. Love CA2/6
(opinion on rehearing)

**NOT TO BE PUBISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GLEN QUINTRELL LOVE,<br><br>    Defendant and Appellant. | 2d Crim. No. B302725<br>(Super. Ct. No. YA040317)<br>(Los Angeles County)<br><br>OPINION FOLLOWING<br>REHEARING |

        Here we remand so that the trial court may conduct a hearing that complies with the requirements of Penal Code[1] section 1170.95 and its amendments as reflected in Senate Bill No. 775.

        Glen Quintrell Love appeals an order denying his petition for resentencing (§ 1170.95) of his first degree murder conviction. In 1999, he was convicted of second degree robbery (§ 211) and

_____

        [1] All statutory references are to the Penal Code.

first degree murder with a robbery-murder special circumstance finding (§§ 187, 189, 190.2, subd. (a)(17)(A)).

In 2019, Love filed a petition for resentencing. The trial court issued an order to show cause on his section 1170.95 petition and held an evidentiary hearing. It found Love was not entitled to resentencing because he was "a major participant and acted with reckless indifference" to human life. After we affirmed the order denying his petition, Love filed a petition for rehearing. We granted the petition to consider the impact of recently passed Senate Bill No. 775 (2021 Reg. Sess.) that amended the section 1170.95 hearing procedure. (Stats. 2021, ch. 551, § 2.)

Reversals and remands are not necessarily a criticism of the trial court due to the continual changes and reinterpretations of the law involving resentencing under section 1170.95. We conclude, among other things, that: 1) Love is entitled to a new evidentiary hearing; 2) the burden is on the People to prove Love could be convicted of murder under current law; and 3) the trial court erred in not making findings under current standards for murder liability. We reverse and remand.

FACTS

Raymond Williams was fatally shot one night after he won money gambling. On the night of April 11, 1997, Chaka Thomas picked up Love and drove to a dice game in Hawthorne. Several other men were there, including Lamar Salone and Williams. Salone showed Thomas a semiautomatic pistol and said he was "strapped." Love participated in the dice game and lost money.

Williams won his bets that evening and boasted about his luck to the others. He left the game and drove away in his van. Thomas left the game shortly after Williams departed and was joined by Love and Salone. According to Thomas, he decided to

2

drive them home because he was nervous about Salone having a gun.

When they reached the corner of 139th Street and Kornblum Avenue, Salone asked Thomas to stop the car so he could use the telephone.  Thomas parked near a phone booth and Salone got out, followed by Love.  A few moments later, Thomas heard four or five gunshots.  Love ran back to the car and excitedly told Thomas, "Let's go."  As they were driving away, Love told Thomas that Williams "started trippin so we had to knock him off."  He showed Thomas a roll of money and offered him some, which Thomas refused.

Williams was still breathing after being shot.  He was alive when police and paramedics arrived, but he died after being taken to the hospital.

On the day after the shooting, Thomas and Salone drove to Love's house where they all discussed the crime and agreed on a story about Thomas giving Love a ride on the night of the dice game after Love's car overheated.

Herschel Houston attended the dice game on April 11.  He told police that he had a conversation with Love.  Love described the robbery and shooting.  Love said he had "jacked" Williams and that Williams had been shot in the head; Salone had fired the gun after Williams made a "funny" move.

DISCUSSION[2]

*Denying the Section 1170.95 Petition*

The origin of section 1170.95 stems from Senate Bill No. 1437 (2017-2018 Reg. Sess.) in 2018.  (Stats. 2018, ch. 1015, § 4.) "Senate Bill 1437 'amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to

_____

[2] We grant the People's request for judicial notice.

3

murder, to ensure that murder liability is not imposed on a person *who is not the actual killer*, did not act with the intent to kill, or *was not a major participant in the underlying felony who acted with reckless indifference to human life.*' " (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417, italics added.)

A defendant convicted of felony murder may file a petition under section 1170.95 alleging he or she "could not be convicted of first or second degree murder" because of changes to the law required by Senate Bill No. 1437. (*People v. Gutierrez-Salazar, supra*, 38 Cal.App.5th at p. 417.) The trial court must determine if the petitioner has made a prima facie showing that he or she falls within the provisions for resentencing relief under the statute. (§ 1170.95, subd. (c).) If the petitioner has made such a showing, the trial court "shall issue an order to show cause." (*Ibid.*) The trial court must then hold a hearing to determine whether to vacate the murder conviction and resentence the petitioner. (*Id.*, subd. (d)(1).)

There are two stages involved in a section 1170.95 petition. If a prima facie showing is made for relief in the first stage, the trial court proceeds to the second stage and issues an order to show cause and the case proceeds to an evidentiary hearing.

*The Evidentiary Hearing*

This case went to a second stage section 1170.95 evidentiary hearing.

At the time Love filed his petition for resentencing, the statute provided, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any

4

allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. *The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.*" (Former § 1170.95, subd. (d)(3), italics added.)

After the trial court issued the order to show cause, the People elected to rely on the "record of conviction." (Former § 1170.95, subd. (d)(3).) They attached the appellate decision that affirmed Love's conviction and they relied on the statement of facts in that decision. In that 2001 decision, we affirmed the special circumstances findings. (*People v. Love* (Aug. 1, 2001, B140458) [nonpub. opn.].) We rejected Love's claims that he was not a major participant in the robbery and that he did not act with reckless indifference to human life. We said: 1) "[Love] was riding in a car with Thomas and Salone, who was armed with a gun"; 2) "Love left the car with Salone, approached Williams, and by his own later admission to Herschel Houston, 'jacked' Williams"; 3) Salone shot Williams when Williams resisted, and Love took money "from Williams' pockets"; and 4) "Love had a motive to rob Williams because Williams had won money gambling that evening while Love had lost his bets."

We also stated, "The jury could reasonably infer from this evidence that Love acted with reckless indifference to human life when he and an armed cohort approached Williams to rob him at gunpoint." (*People v. Love, supra,* B140458.) We said the jury "could further infer that Love was *a major participant* in the robbery based on" 1) "his presence at the scene of the robbery and shooting"; 2) "his admission that he had 'jacked' Williams"; and 3)

"his removal of the money from Williams' pocket." (*Ibid.*, italics added.)

At the end of the second stage section 1170.95 hearing, the trial court indicated it read the summary of facts in the appellate opinion and stated:  1) "Mr. Salone was armed with a gun.  Mr. Love left the car with Mr. Salone, or within seconds after Mr. Salone left, approached the victim"; 2) "[Love] admitted when he returned to the car that he jacked the victim"; 3) "four or five gunshots were heard"; 4) "Mr. Love had a motive to rob Mr. Williams because he had gambled with Mr. Williams, and lost money to Mr. Williams"; and 5) "Mr. Love returned to the car, and showed everyone a roll of money" and "admitted to jacking Mr. Williams" with "knowledge that Mr. Salone had fired the gun."

### *Senate Bill No. 775*

Love filed a petition for rehearing noting that the Legislature passed Senate Bill No. 775 which contains new procedures for section 1170.95 evidentiary hearings.

As will be seen, Love did not receive a valid section 1170.95 hearing.  He is therefore entitled to a reversal and remand for a new hearing.  The trial court must apply current law required by Senate Bill No. 775.  (*People v. Navarro* (2007) 40 Cal.4th 668, 681; *People v. Charles* (1967) 66 Cal.2d 330, 335; *People v. Sims* (2021) 59 Cal.App.5th 943, 964.)

### *The Burden of Proof*

At the evidentiary hearing, the trial court placed the burden on Love to initially present his case.  The court said to Love's counsel, "Since you're the moving party, I believe it's your turn to go first."

6

But this was error because under the statute, at the hearing the People have the burden of proof to show that Love was ineligible for resentencing under current law beyond a reasonable doubt.  (§ 1170.95, subd. (d)(3).)  Love already made a prima facie showing that he was entitled to relief which is why the trial court issued an order to show cause for the evidentiary hearing.

Placing the burden on the petitioner does not comply with the statutory procedure and deprives the defendant of the opportunity to receive the hearing mandated by the statute.

Moreover, switching the burden to the defendant, instead of the prosecutor, involves a structural error that cannot be sustained.  (*Armstrong v. Manzo* (1965) 380 U.S. 545, 551.)  "For 'it is plain that where the burden of proof lies may be decisive of the outcome.' " (*Ibid*.)  Consequently, switching the burden to the wrong party implicates serious due process infirmities involving the structural integrity of the proceedings.  (*Ibid*.; *Speiser v. Randall* (1958) 357 U.S. 513, 525-526.)  Had the court required the prosecutor to go first, the People's failure of proof would have entitled the defendant to request that his petition be granted.  It is well established that the burden of proof "never shifts to the defendant to prove that he is innocent." (*People v. Fiu* (2008) 165 Cal.App.4th 360, 383.)  The People are required "to prove the facts establishing a defendant's guilt beyond a reasonable doubt." (*People v. Mower* (2002) 28 Cal.4th 457, 478.)

*Findings on the Current Standards for Murder Liability*

Love claims the trial court's findings and the jury's prior special circumstances findings are not consistent with *current* legal standards involving findings involving major participants acting with reckless indifference to human life.  We agree.

7

Years after Love's 2001 conviction, the California Supreme Court highlighted a series of additional factors that must be considered before a defendant who was not the actual killer can be convicted of murder as a major participant who acted with reckless indifference to human life under current law. (*In re Scoggins* (2020) 9 Cal.5th 667; *People v. Clark* (2016) 63 Cal.4th 522; *People v. Banks* (2015) 61 Cal.4th 788.)

In *Banks*, the court mentioned several relevant factors, including: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?" (*People v. Banks*, *supra*, 61 Cal.4th at p. 803.)

In *Clark*, the court held, "A defendant's *knowledge of factors* bearing on a cohort's likelihood of killing are significant . . . ." (*People v. Clark*, *supra*, 63 Cal.4th at p. 621, italics added.)

In *Scoggins*, the court held there was no ground to find reckless indifference to human life in a case of a defendant who planned an unarmed assault and robbery where one of his associates at the crime scene unexpectedly used a gun and shot a victim to death.  The court noted that the defendant did not "know that a gun would be used during the felony." (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677.)

8

During the hearing, Love's counsel said the record of conviction did not answer critical questions regarding relevant *Banks* factors, including, among other things, 1) whether Love "was aware that Salone was armed" when they were in the car; 2) whether Love "arrived at the scene of the shooting before the shot rang out"; and 3) whether Love "had any history of knowing Salone would be willing to arm himself, and use lethal force."

Here the trial court erred by not requiring the People to initially meet their burden of proof at the evidentiary hearing and by not making findings on the relevant *Banks*, *Clark*, and *Scoggins* factors. These are factors to be considered and weighed in deciding the petition and in ruling on whether the People met their burden of proof. If the record of conviction does not contain facts on these issues, the People must present evidence on them to satisfy their initial burden of proof beyond a reasonable doubt. Because the record of conviction does not include facts on the *Banks*, *Clark*, and *Scoggins* factors, solely relying on that record was error.

DISPOSITION

The order denying the section 1170.95 petition is reversed. The case is remanded to the trial court for a new evidentiary hearing at which the parties may present additional evidence as they see fit.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.          PERREN, J.

9

Laura C. Ellison, Judge

Superior Court County of Los Angeles

_____

Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.