[Crim. No. 8700. Second Dist., Div. Two. Sept. 27, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOHNELL SULLIVAN MOORE, Defendant and Appellant.

Johnell Sullivan Moore, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Convicted of second degree burglary, defendant Moore appeals from the judgment of conviction entered against him and a codefendant following a nonjury trial. In his brief filed herein, appellant states that he "does not contend that the evidence is insufficient to support the judgment," but he assigns as prejudicial errors certain statements of counsel and rulings of the court made during the proceedings.

His concession regarding the sufficiency of the evidence is more than justified by the record. It would be difficult to envision a case in which more conclusive evidence was presented. The bookkeeper-secretary and the secretary-treasurer and general manager of the Western Pottery Company each testified that the offices of the company were locked when they left on Friday, July 13, 1962, and that although the Regal Maintenance Company and its employees were authorized to enter the premises after working hours for cleaning purposes, no persons were authorized to remove any equipment or valuable items therefrom.

When the witnesses returned to the premises on July 15, 1962, they found the offices in a shambles with drawers of cabinets and desks opened and papers strewn all over the floor and the desks. A window was found open and the screen removed. Later the screen was found on the roof of the building. A night light above the door also had been removed. Missing from the office were approximately $250 from the cash box, a check protector of a value of approximately $150 and the general manager's personal watch of the value of approximately $25. The codefendant was identified as one of the employees of the Regal Maintenance Company.

A kiln fireman of the Western Pottery Company testified that he worked the "graveyard" shift from 11 p.m. July 14, 1962, to 7 a.m. July 15, 1962. He saw a station wagon which he identified as that of the codefendant arrive and park near the office. He also observed it leave and noted that it was occupied by two men. He noted that the night light, which

was burning prior to their arrival, was off after they left.

A police officer of the City of South Gate testified that he had interrogated both defendants and that both freely and voluntarily admitted that on an earlier occasion they had discussed the idea of taking the money from the company and arranging the premises to look like the work of a burglar, and that the window screen and light had been removed for this purpose. They took the check protector to add further to the impression which they sought to create and immediately destroyed it. They divided the money between them; the watch was returned by appellant who recovered it from a dresser drawer at his residence.

Both appellant and his codefendant took the stand and admitted all matters testified to by the officer except that each stated that the prior conversation regarding the simulated burglary had been initiated by the other and each had rejected the idea. Appellant also testified that he had helped his codefendant clean the premises and then went out and sat in the car. A few minutes later the codefendant came out with a box and appellant saw him remove the night light but "didn't pay much attention to it." Thereafter, they stopped at a taco stand and the codefendant gave appellant $70 from the box without explanation. They then destroyed the check protector and the codefendant took appellant home. Appellant also took the watch and kept it at his home.

The codefendant's version of the thefts was that while he was attempting to clean the premises, appellant was tearing everything apart. The office became "such a mess" that he decided it was too late to straighten it up. He then suggested that they take the check protector also to "make it look like something." Thereafter appellant gave him $70 stating he was "splitting" the money. Appellant kept the watch and they destroyed the check protector.

Clearly, since both defendants admitted the thefts and their prior planning thereof, it was entirely reasonable for the trial court to disbelieve the portions of their testimony whereby each attempted to shift the primary responsibility to the other, and to find them both guilty of burglary.

Appellant's initial assignment of error relates to the statement of the deputy district attorney in his closing argument that "by [codefendant's] own testimony, he went back in the second time with the intent to take the check protector, which itself would be a burglary."

The actual testimony to which reference was made was the following which occurred during the direct examination of the codefendant: "Q. And when you left that evening did he [appellant] carry the cash box out with him? A. Yes. Q. And did he carry the watch out with him? A. Yes. Q. Who carried the check protector? A. *We both went back in there,* looking over things, and I says, 'Since it's all like this, we can't straighten the place up, I can't get out of it, so let's take something to make it look like something.' " (Italics supplied.)

Certainly the comment of the district attorney was not an unreasonable suggestion concerning the effect of this testimony, but, even if the suggested inference therefrom were regarded as improper, it was certainly not prejudicial to appellant. The codefendant had testified that appellant had begun carrying out his plan to commit the crime from the first moment they entered the premises, and this final statement was given only by way of explanation as to how he, the codefendant, came to join in the scheme.

■ Appellant also assigns as error the fact that his counsel, a deputy public defender, in arguing for his acquittal, stated that, although appellant might be guilty of receiving stolen property, he was not guilty of the crime of burglary as charged and that receiving stolen property, *"is not a lesser included offense"* of burglary. Appellant asserts that this was erroneous because receiving stolen property *is* a "lesser offense." His counsel's statement, however, was quite correct, for while the offense may be *"lesser,"* it is not *"included"* within the crime of burglary. (*People* v. *Russell,* 34 Cal.App. 2d 665, 670 [94 P.2d 400].)

■ Finally, appellant contends that he was placed in double jeopardy by a statement of the trial court made at the time of the probation and sentencing hearing. The trial judge indicated that he had read and considered the probation report and by way of comment thereon stated: "It appears in this matter that [appellant] was the instigator of this offense, which occurred after he had been paroled from the State Prison for only . . . nineteen days, when he was arrested for this offense. There are numerous convictions and arrests, many of which are burglary."

Manifestly, the inclusion of appellant's past record in the probation report and consideration thereof by the court does not constitute a violation of any rule relating to the principles which govern the doctrine of former or double jeopardy. We have made a full, independent examination of the record

herein and find absolutely nothing to suggest the presence of any prejudicial error or any miscarriage of justice.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.