[Crim. No. 13893. Second Dist., Div. One. Feb. 6, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. MELVIN
TYRONE TYLER, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Roger E. Venturi and Elliott D. McCarty, Deputy Attorneys General, for Plaintiff and Respondent.

FOURT, J.—Melvyn Tyrone Tyler appeals from a judgment of conviction of burglary (Pen. Code, § 459) pursuant to a jury verdict.

Tyler and three codefendants, Robert Earl Blakely, Alex Anderson and Artie Pullam, were jointly charged with burglary and the court appointed a public defender to represent all four codefendants at their trial. Following two days of trial, the jury found Tyler and each of his three codefendants guilty as charged. The court denied probation and Tyler was sentenced to state prison for the term prescribed by law. Tyler then discharged the public defender as his attorney and moved in propria persona for a new trial and a stay of execution of his sentence. The court denied these motions and Tyler appeals from the judgment.

Appellant contends that he was deprived of his right to separate counsel as guaranteed by the federal Constitution, that the evidence was insufficient to support his conviction, and that the trial court committed error in failing to instruct the jury on the lesser included offense of receiving stolen property. These contentions are without merit.

A résumé of some of the facts is as follows: Harrison Brogden is the owner of the International Cast Products, a firm which produces die cast plumbing supplies and aircraft parts. At 12:30 a.m. on December 19, 1966, Brogden visited the foundry to make a routine inspection of the temperature and functioning of the company's automatically controlled brass furnaces, and he found the equipment operating properly. When he locked up and left the foundry at about 12:40 a.m.,

there was no one in the plant and a pile of brass ingots lay on the floor in the center of the building.

George Kobata, who resided across the street from the foundry and operated a nursery on property adjacent to the plant, went outside to take the temperature at about 2 a.m. on December 19, 1966. A clanking noise attracted his attention and looking across the street he observed at least three persons carrying heavy metal objects through a narrow alleyway running between the foundry and the nursery building, then depositing these objects in a red automobile parked at the curb. The only other car in the area was parked some distance from the foundry. After George Kobata observed this activity for several minutes he called the police.

Officer R. J. Clifton and his partner were cruising in a radio patrol car in the vicinity of the foundry and when they received a call alerting them to watch for a suspicious vehicle, they were but one block from the foundry. They arrived at the scene in a few seconds and saw an automobile with a white top and red body parked in front of the plant. That car immediately pulled away from the curb and headed toward the patrol car. The operator of the patrol car switched on its flashing lights in an attempt to halt the approaching car. The driver, however, instead of stopping, accelerated and continued past the police car. The patrol car turned and followed with red lights and siren blasting until the red car finally stopped at the curb some distance from the foundry after running a red signal light at Western Avenue. The police officers ordered the occupants, appellant and his three codefendants, who all appeared to be "hot and sweaty," to get out of the car. The motor continued running and upon inspection Officer Clifton found that in place of an ignition key the termination of wires was twisted together to form an apparent ignition switch. He probed the car's interior with his flashlight and discovered that brass ingots were scattered throughout the front and rear passenger compartments. These brass ingots were taken to the police department where they later were identified by Brogden as being from the foundry. When the police called Brogden at his home about 3:10 a.m., he returned to the foundry and there noted that a large number of brass ingots were missing from the pile in the center of the building. The 85 missing brass ingots, each of which weighed approximately 18 pounds, were recovered by Brogden later from the police department. Brogden did not know any

of the codefendants, nor had he given any of them permission to enter the foundry building.

Appellant did not testify at the trial, but relied upon statements by codefendant Blakely who testified that he and appellant took no part in the burglary, but were mistaken for the persons who actually participated. Blakely said that all the defendants had been drinking and playing cards together the day before the burglary and shortly before midnight they visited a nearby liquor store. Anderson supposedly went inside to purchase some liquor and as he was leaving he was approached by a stranger who asked him to haul some material. Anderson thereupon got back into the car and followed another car carrying the stranger and two other men to the foundry location. When they arrived at the foundry, the three strange men supposedly got out and began loading ingots into both cars from the alleyway adjacent to the foundry. None of the defendants loaded ingots, nor did they speak to the three strangers or discuss between themselves the transaction concerning the ingots. When the ingots were loaded the strangers told Anderson to follow them, but before he could do so they shouted ''[h]ere comes a car,'' jumped into their own car and quickly left. The defendants also pulled away; they did not immediately stop for the police because they did not notice the red flashing signal until the patrol car turned around and pursued the Anderson car for some distance.

 Appellant contends that under the circumstances he was entitled to representation by separate counsel. The trial court, however, is required to appoint separate counsel to represent one or more codefendants only when a conflict of interests exists and is demonstrated to the trial court. (*People* v. *Hall*, 178 Cal.App.2d 878 [3 Cal.Rptr. 442]; *People* v. *Kitchens*, 164 Cal.App.2d 529, 542-543 [331 P.2d 127].) It is then incumbent upon the trial judge, upon timely objection to joint representation of codefendants by a single attorney on the basis of conflicting interests, to appoint separate counsel (*People* v. *Ingle*, 53 Cal.2d 407, 416-417 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Sprinkle*, 201 Cal.App.2d 277 [19 Cal. Rptr. 804]), but the defendant who has failed to assert this objection early in the trial proceedings may not rely upon joint representation as grounds for reversal upon appeal. (*People* v. *Byrd*, 228 Cal.App.2d 646, 649-650 [39 Cal.Rptr. 644].) ''No conflict of interest was brought to the attention of the trial court or motion for a severance nor request for a continuance to obtain counsel made before or

during the trial. Under similar circumstances, our Supreme Court has indicated that such failure amounts to a free and intelligent waiver of the right to representation [citation]." (*People* v. *Sprinkle, supra,* 281-282.) Tyler made no claim before or during the trial that a conflict of interest existed between him and his codefendants, or any of them, but asserted this proposition only at the conclusion of the trial and in connection with his motion for a new trial. He intimates that a potential conflict existed because codefendant Anderson was the only person to talk with the alleged stranger at the liquor store, that only he purportedly knew anything about the burglary, and that a conflict of interest thus arose between appellant and Anderson. Anderson did not testify, but the alibi testimony and denial of knowledge asserted by codefendants Blakely and Pullam at the trial was consistent and each tended to corroborate statements by the other. (*People* v. *Winkelspecht,* 237 Cal.App.2d 227 [46 Cal. Rptr. 697].) The public defender was, therefore, under no handicap in representing all four codefendants but, in the light of overwhelming evidence against them, he could allow them to remain silent or to try to establish an alibi. "[T]he mere fact that one attorney represents multiple defendants does not deprive one of the defendants of his right to counsel, and the burden is on the defendant to advise the trial court of any alleged conflict of interest." (*People* v. *Jolke,* 242 Cal.App.2d 132, 140 [51 Cal.Rptr. 171].) The trial judge in California has no mandatory statutory duty to apprise codefendants of the risks involved in proceeding to trial under joint representation by a single attorney, or to appoint separate counsel for defendants who have such conflicting interests except upon timely objection to single representation.

Appellant next contends that the evidence is insufficient to support the verdict and conviction. The circumstantial evidence in this case, as hereinabove set forth, constitutes a *prima facie* showing that the transportation of the ingots was the act of a criminal agency. (*People* v. *Hidalgo,* 195 Cal.App. 2d 843 [16 Cal.Rptr. 312].) It is not essential in order to establish the specific defendant's guilt that any of the witnesses should have actually seen him break and enter the premises. "It rarely happens that an offense, like that here complained of, can be proved by witnesses who saw and recognized the defendant in the act, and resort must, therefore, ordinarily be had to circumstantial evidence." (*People* v.

*Flynn,* 73 Cal. 511, 513 [15 P. 102]; *People* v. *Murphy,* 173 Cal.App.2d 367 [343 P.2d 273].) The possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct by the defendant tending to show his guilt. (*People* v. *Lyons,* 50 Cal.2d 245, 258 [324 P.2d 556]; *People* v. *Citrino,* 46 Cal.2d 284, 288-289 [294 P.2d 32].) Appellant's possession of the stolen property and his flight from the scene with his codefendants generate a strong inference that he and his codefendants unlawfully entered the foundry building with the intent to steal or, at the very least, that appellant aided and abetted his codefendants in the entry and theft rendering him guilty as a principal in the crime. (Pen. Code, § 31; *People* v. *Jones,* 232 Cal.App.2d 538, 540 [42 Cal.Rptr. 925].)

Finally, appellant contends that the trial court should have undertaken upon its own motion to instruct the jury that appellant could be convicted of receiving stolen property as a necessarily included offense. However, it is only where it is impossible to commit the offense charged in the accusatory pleading without committing as well another offense that the latter is a necessarily included lesser offense which entitles the defendant to a jury instruction. (*People* v. *Marshall,* 48 Cal.2d 394, 405 [309 P.2d 456]; *People* v. *Greer,* 30 Cal.2d 589, 596 [184 P.2d 512]; *People* v. *Powell,* 236 Cal.App.2d 884, 886 [46 Cal.Rptr. 417].) It cannot be said that the offense charged in the information, which requires the intent to commit a felony and theft, embraces the crime described in section 496, subdivision 1, of the Penal Code, which calls for an intent knowingly to receive property which was stolen by "another"; an instruction on the crime of receiving stolen property would, therefore, be improper. (*People* v. *Russell,* 34 Cal.App.2d 665 [94 P.2d 400]; *People* v. *Mora,* 139 Cal.App.2d 266, 274 [293 P.2d 522]; *People* v. *Moore,* 220 Cal.App.2d 737, 740 [34 Cal.Rptr. 38].) The offense of receiving stolen property is neither included as a matter of law in the offense of burglary, nor supported by the facts before the trial court, and appellant was, under the circumstances, entitled to be acquitted if not convicted of the crime charged. Defense counsel's failure to request an instruction on receiving stolen property cannot be criticized as symptomatic of inadequate representation of these codefendants, but it indicated instead a tactical decision taken after due reflection by a competent and experienced trial law-

yer. (*People* v. *Ibarra*, 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 4, 1968. Peters, J., was of the opinion that the petition should be granted.