[Crim. No. 4815. Third Dist. Jan. 13, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. WAYNE JOSEPH HOPPER et al., Defendants and Appellants.

Robert N. Chargin, Public Defender, and Ann Chargin, Deputy Public Defender, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Arnold Overoye, Talmadge R. Jones, and Edsel W. Haws, Deputy Attorneys General, for Plaintiff and Respondent.

FRIEDMAN, J.—A nonjury trial in the Municipal Court of the Stockton Judicial District resulted in the four defendants' conviction of contributing to the delinquency of minors. (Pen. Code, § 272.) The appellate department of the superior court affirmed the convictions in a published opinion. (*People* v. *Hopper*, (Cal.App.Supp.) 66 Cal.Rptr. 691.) This court ordered the case transferred here for decision.

The appeal comes up on a settled statement in lieu of a

reporter's transcript. Gist of the matter is that four minor girls escaped from a custodial facility for juveniles in Stockton. Two nights later police officers found three of the girls (Cathy, Marsaida and Esther) and defendants Hopper, Suazo and Vasquez under somewhat compromising circumstances at the home of Vasquez. The officers took the three girls and the three defendants to the police station, where the girls made statements to the officers. About 5:30 that morning two of the officers passed the house again. Noticing an open front window and knowing that Vasquez was in jail, they knocked on the door. A person who identified himself as Samuel Barry opened the door. The officers asked permission to enter the house and search. Barry did not object. Over an objection on the ground of unlawful entry and search, Officer Castle testified that he found Flores, the fourth of the appellants, in bed with the fourth girl, Rosalie. This discovery prompted the arrest of Flores and Barry. The latter was subsequently acquitted.

At the trial in the municipal court Cathy and Marsaida were called as prosecution witnesses. Both refused to identify the defendants. When asked if she had made a statement to the officers on the night in question, each stated that she did not remember. In response to further direct examination, each remained mute or indicated that she did not want to answer. Over defense objections, one of the officers was then permitted to relate the statements the two girls had made at the police station. Cathy's statement did not implicate any defendant and denied indulgence in sex or alcohol. Marsaida, however, had told the police of being picked up in a park by defendants Hopper, Suazo and Vasquez, of drinking liquor with them and of accepting an invitation to go to the house of Vasquez. Admissibility of these statements is one of the two issues on appeal.

■ *People* v. *Johnson,* 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111], was decided May 28, 1968, after defendant's trial and the superior court affirmance of their conviction. By the standard enunciated in *Johnson,* the trial court erred in permitting evidence of the girls' extrajudicial statements.

Evidence Code section 1235 is designed to allow evidence of a witness' prior inconsistent statement not only to impeach the witness but also for the truth of the statement's content.[1]

---

[1] Evidence Code section 1235 provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the state-

*Johnson* holds that in criminal trials section 1235 cannot be constitutionally invoked for the latter purpose; that use of the witness' prior hearsay statement deprives the accused of his Sixth Amendment right to confront and cross-examine the witness, as that right has been delineated by the federal Supreme Court in such cases as *Douglas* v. *Alabama*, 380 U.S. 415 [13 L.Ed.2d 934, 85 S.Ct. 1074], *Pointer* v. *Texas*, 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065], and *Bridges* v. *Wixon*, 326 U.S. 135 [89 L.Ed. 2103, 65 S.Ct. 1443]. Although *Johnson* was applied to exclude the witness' prior sworn testimony as substantive evidence in the criminal trial, its rationale applies with equal vigor to the witness' prior extrajudicial statement. (*Bridges* v. *Wixon, supra*, 326 U.S. at pp. 153-154 [89 L.Ed. at pp. 2114-2115]; *People* v. *Woodberry*, 265 Cal.App.2d 351, 360 [71 Cal.Rptr. 165]; *People* v. *Green* *(Cal.App.) 71 Cal.Rptr. 100; Wigmore on Evidence (3d ed.) § 1018(b), fn. 3, p. 688; see McCormick, *The Turncoat Witness: Previous Statements as Substantive Evidence*, 25 Tex.L.Rev. 573.)

The People argue that the prior statements of Cathy and Marsaida were admitted for impeachment only, hence that the *Johnson* rule is inapposite. The settled statement shows that the attorneys' courtroom debate over admissibility revolved around the question whether a party may impeach a witness who claims forgetfulness but does not testify adversely; that the trial court admitted the statements without limiting their purpose to impeachment. Since *People* v. *Johnson* had not yet restricted the scope of Evidence Code section 1235 in criminal cases, there was no apparent reason for the trial judge, as finder of fact, to abstain from considering the statements as substantive evidence against the defendants. We cannot assume that the judge limited this evidence to the narrow purpose of weighing credibility. There was little reason for him to do so, for the girls' courtroom testimony hardly extended beyond a claim of lost memory.[2] To give weight to

ment is inconsistent with his testimony at the hearing and is offered in compliance with Section 770.''

Section 770, in effect, requires that the witness be given an opportunity to explain or deny the prior statement at some point in the trial. (See also Evid. Code, §§ 780, subd. (h), 785.)

*A hearing was granted by the Supreme Court on October 9, 1968. The final opinion of that court is reported in 70 Cal.2d —— [75 Cal.Rptr. 782, 451 P.2d 422].

[2]The prosecution's impeachment theory is questionable in any event. True, some authorities equate a claim of lost memory with inconsistency. (See *Anthony* v. *Hobbie*, 85 Cal.App.2d 798, 804 [193 P.2d 748]; Wig-

the unsworn extrajudicial statements as evidence of guilt was improper.

▪ The error in substantive use of the prior statements does not require reversal unless prejudice ensued. The error is of federal constitutional dimensions. Thus the test of prejudice is whether the error was "harmless beyond a reasonable doubt." (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 711, 87 S.Ct. 824] ; *People* v. *Johnson, supra,* 68 Cal.2d at pp. 660-661.) ▪ The rule of harmlessness beyond a reasonable doubt requires reversal if examination of the entire record reveals a reasonable possibility that the error substantialy influenced the conviction. (*People* v. *Haston,* 69 Cal.2d 233, 257 [70 Cal.Rptr. 419, 444 P.2d 91] ; *People* v. *Coffey,* 67 Cal.2d 204, 220 [60 Cal.Rptr. 457, 430 P.2d 15].) ▪ The People assert absence of prejudice, arguing that there is enough independent evidence to bring the defendants within the broad terms of the delinquency statute, section 272 of the Penal Code. Appellate inquiry into prejudice is not a process of subtracting the invalid elements to ascertain whether the remaining record is adequate to sustain guilt. Rather, the process entails scrutiny of the entire record to determine the error's influence.

In the totality of evidence, the inadmissible statement of Marsaida had a relatively heavy incriminating quality. The officers had found Hopper and Marsaida parked in a car outside Vasquez's house at 2 a.m., went to the rear door and found Suazo and Vasquez there with "one or two girls," and these persons "scattered" at the approach of the officers. Marsaida's inadmissible statement related how the girls had met Hopper and Suazo at some unspecified earlier time ; that these two defendants then bought an alcoholic beverage ; that Vasquez joined them ; that the group drank liquor in a park ; that they went to Vasquez's home in his car. Examination of the

more on Evidence (3d ed.) § 1043, pp. 736-737 ; Carnovale, *The Evidentiary Use of a Witness's Prior Extrajudicial Statement,* 39 U. Det. L.J. 393, 397.) In this case each girl testified that she had escaped from the juvenile hall, then asserted loss of memory when asked if she had made a statement to the police after her recapture. At that point the attempted "impeachment" occurred. What was the purpose of the so-called impeachment? To prove that the witness was lying when she admitted escape from the juvenile hall? To all appearances the prosecution was not interested in attacking her admission of escape but in inoculating the record with her extrajudicial statement for its own sake. Prejudice slips in with such artfully contrived "impeachment." (See *People* v. *Flores,* 37 Cal.App.2d 282, 287 [99 P.2d 326].) A prosecutor alert to protect his record on appeal will weigh such opportunities with great care.

settled statement creates at least a reasonable possibility that Marsaida's inadmissible statement substantially influenced the finding of guilt of Hopper, Suazo and Vasquez.

Neither girl's prior statement implicated Flores. According to the settled statement, Officer Castle's testimony was the only evidence against him. The officers had found him in bed with Rosalie on their second matinal visit to the house of Vasquez. There is no reasonable possibility that the girls' earlier statements to the police influenced Flores' conviction. The error was harmless as to him. Flores' appeal, however, raises an additional question: validity of the police entry which produced his detection and arrest.

The People point to the consent of Barry, an occupant of the house, as justification for police entry without a warrant. Absence of a warrant puts the burden of showing justification on the prosecution. (*People* v. *Faris,* 63 Cal.2d 541, 545 [47 Cal.Rptr. 370, 407 P.2d 282] ; *Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23].) The Fourth Amendment is not violated by a warrantless entry and search of a dwelling if made with the consent of a third party whom the police reasonably and in good faith believe has authority to consent. (*People* v. *Hill,* 69 Cal.2d 550, 555 [72 Cal. Rptr. 641, 446 P.2d 521] ; *People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469].) It is thus incumbent upon the prosecution to point to the settled statement—the evidentiary record on appeal—to demonstrate that Officer Castle and his companion reasonably and in good faith believed that Barry had authority to consent to their search of the house which they knew belonged to the jailed Vasquez.

The settled statement produces no information to meet the prosecution's burden of justification. It contains a skeletal narrative furnishing no inference on the score of the officers' reasonable belief in Barry's authority.[3] An appellate court cannot by speculation and surmise fill gaps in a settled statement. (*Chaffin* v. *Wallace Finance Co.,* 136 Cal.App.2d Supp. 928, 930 [289 P.2d 313].) The record on appeal shows no adequate consent to the search.

 Alternatively, the People justify the entry and

[3]The following excerpt from the settled statement represents the evidentiary basis by which the reviewing court is asked to measure validity of the search: ''Officer Castles testified that he and his partner returned to duty and at about 5:30 a.m. were in the same area. The officer noticed a front window in the Vasquez home was open. They went to the front door and knocked, and the door was opened by a person who identified himself as SAMUEL BARRY. The officers asked permission to come in and search the house. Defendant BARRY did not object.''

search by the officers' broad power to take juvenile escapees into custody (Welf. & Inst. Code, § 625), claiming that the officers ''obviously'' had reasonable cause to believe Rosalie, the fourth escapee, was in the house. The assertedly obvious is not obvious at all. Here too, the reviewing court is asked to fill a gap in the record by exercising its imagination. The settled statement has it that the officers stopped at the house of the jailed Vasquez because they noticed an open front window. It describes no circumstance from which to draw an inference that the officers had an honest and strong suspicion of Rosalie's presence in the house. The process of review does not encounter the legal question whether such a suspicion would have authorized a warrantless entry, because the record fails to fulfill the prosecution's burden of showing that suspicion.

Judgment reversed.

Pierce, P. J., and Regan, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 12, 1969.