[Crim. No. 3413.    Third Dist.    Aug. 25, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JODIE
CARTER et al., Defendants and Appellants.

Robert Carl Anderson and William S. Gregory, under appointments by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Jack R. Winkler, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, J.*—Both defendants appeal from judgment of conviction, after jury trial, of robbery in the second degree.[1]

## QUESTIONS PRESENTED

As to both defendants:

1. Failure of trial court *sua sponte* to appoint separate counsel;

2. Admission of extrajudicial statements by codefendants incriminating the other defendant;

3. Insufficiency of evidence;

4. Court's failure to instruct *sua sponte* on assault as an included offense and to consider certain testimony of Officer Sanich with distrust.

## EVIDENCE

At the trial both defendants were represented by the same deputy public defender.

About 11 p.m., Mrs. Belle Pray was standing in front of the hotel where she lived in Sacramento. She saw a man walk out of the nearby Day and Night Club; he was followed by the two defendants. The man was "pretty drunk." She saw defendant Carter push the man. She then saw defendant Williams hit the man and knock him to the ground. She saw Carter "stomp" the victim, that is, kick him in the head. Williams went back into the club. Carter remained and Mrs. Pray saw him take money out of the victim's pocket. On cross-examination, she said that she could not see what Carter took, but that she saw Carter go through the victim's pockets and remove something. Carter's hand was clenched and she could

---

*Retired Presiding Judge of the Court of Appeals sitting under assignment by the Chairman of the Judicial Council.

[1]Probation was denied both defendants and each was sentenced to state prison, Carter's term to run concurrent with any prior uncompleted term—Carter had admitted two prior felony convictions. On the original appeals from the judgment herein, the attorney then appointed by this court to represent both defendants filed a letter stating that he found no merit in their appeals. This court on July 3, 1964, filed an unpublished opinion affirming the judgment. Thereafter, on motion of Williams, this court recalled the remittitur, restored the appeals and appointed separate attorneys to represent defendants.

not see what was in it. Carter asked her, "Do you want some of it, too?" Carter then held this hand tight. and walked back into the club. She was about six feet from where the affair took place, which was well lighted by a street light. She did not call the police. Police Officer Sanich arrived "[a] few minutes afterwards." Mrs. Pray had never seen the victim nor the defendants before.

Sanich testified that he and his partner were in a patrol car about a block and a half from the location where the incident took place. They heard a police broadcast about an incident at that location. The police had been notified by an unidentified cab driver. Sanich first talked to the victim and then to Mrs. Pray. The victim told Sanich that he had been beaten, knocked down and "[t]wo men robbed me. They went back into the bar."

Sanich went into the bar and saw both defendants standing next to each other at the bar and near the entrance. They appeared to be exchanging money. Carter had $2 in his hand; Williams had $1. They had some coins in their pockets but the officer did not remove them. Sanich arrested both defendants and brought them out on the sidewalk where Mrs. Pray and the victim were. The victim was identified as Harris Taylor. In the presence of both defendants Taylor identified defendants and told the officer both had struck and knocked him down and took $3 and some coins from his pockets. Carter said: "I didn't do it. Williams did it." Sanich testified that he believed Carter was "indicating . . . the robbery itself." Williams said nothing although Carter's remarks were loud enough for Williams to hear. Both defendants appeared to have been drinking; Carter was drunk. At the preliminary examination Sanich testified that he believed both defendants denied Taylor's charge but at the trial he did not recall whether they did or not.

Mrs. Byrd testified for defendants. She had separated from her husband and was planning to marry Carter when the latter's divorce was final. When she drove up to the night club, Carter was pulling Williams off a man on the ground (Taylor). Carter jumped back but Williams kept hitting the man. Carter did not participate in the fight. Both defendants went into the bar when the police drove up. She saw neither man remove anything from Taylor. She saw Mrs. Pray standing about five feet from the affray.

Officer Kearns testified that Williams admitted fighting with Taylor but denied robbing him.

Carter did not testify. Williams testified to meeting Carter in the Day and Night Club. Carter was drunk. Williams declined a beer and Carter bought him a 7-Up. Taylor, a man Williams had never seen before, asked Williams to buy him a beer. When Williams refused, Taylor started arguing and finally hit Williams on the jaw. The bartender put both men out. Outside Williams and Taylor were wrestling and both fell down. Carter told them to quit before both got arrested. Williams arose when he saw the police come and returned to the bar, leaving Taylor lying there. Carter had preceded him into the bar. Neither defendant took money from Taylor.

Williams denied that he and Carter were exchanging money when Sanich entered the bar. He also denied that Taylor accused him of robbing him of $3 and beating and kicking him. Williams admitted not denying to the police that he hit Taylor.

On rebuttal Sanich testified that at the police station he asked Williams if he got a small laceration which was on his right knuckles from hitting Taylor and if he robbed Taylor. Williams replied, "he didn't have anything to do with it." Sanich testified that Williams did not state that Carter robbed Taylor but "indicated" that he did. The court ordered Sanich's statement stricken and admonished the jury to disregard it. Sanich testified Williams said Carter had struck Taylor. Williams said that he also hit Taylor. Sanich testified that Carter said Williams had robbed Taylor.

Taylor apparently could not be found and did not appear at the trial.

1. Separate counsel.

Each defendant contends that there was a conflict of interest between him and his codefendant at the trial of the case and that the court committed prejudicial error in not appointing *sua sponte* separate attorneys for the defendants. At no time in the trial did either defendant give any indication of dissatisfaction with the deputy public defender who represented both defendants.

However, while ordinarily a defendant may not complain on appeal of dual representation by his counsel if he does not request separate counsel at his trial or at least indicate dissatisfaction with the attorney (*People* v. *Tyler* (1968) 258 Cal.App.2d 661, 666 [65 Cal.Rptr. 907]), if actually the dual representation resulted in ineffective representation of a defendant, his right to effective representation of counsel may

not be deemed waived by failure to request separate counsel (*People* v. *Chacon,* 69 Cal.2d 765, 773-774 [73 Cal.Rptr. 10, 447 P.2d 106] ; see also *People* v. *Graham* (1969) 71 Cal.2d 303 [78 Cal.Rptr. 217, 455 P.2d 153]).  Our duty then is to search the record and to determine whether there was such a conflict of interests between Carter and Williams as to deny either effective representation by counsel.

Mainly, the contention is made that had there been separate counsel, Carter's counsel would have argued that Williams was the robber and Williams' counsel would have argued that Carter was the robber because of statements made to Officer Sanich by both defendants. In view of the testimony of Mrs. Pray that both defendants were engaged in beating Taylor and Officer Sanich's testimony that he saw both defendants with the exact amount of currency stolen, it would have been absurd for counsel for either defendant to have admitted that there was any robbery at all. Separate counsel could reasonably only have argued, as did joint counsel, that at most there was a drunken brawl in which Carter did not participate but Williams admitted that he, Williams, did and no robbery.

Ordinarily a single attorney representing two defendants cannot effectively cross-examine where, either by in-court testimony or by extrajudicial statement, one defendant has accused the other of guilt. But here, we have a most unusual situation where separate attorneys could have done no more for his client than the single attorney did for both clients.

Williams testified that he was the one who hit Taylor and that Carter was trying to stop him from doing so and that neither defendant took any money from Taylor. A single attorney for Williams could not have helped him any in view of that testimony.

A single attorney for Carter had nothing to examine Williams on, considering that he was exculpating Carter. While Officer Sanich testified Williams had said that in addition to his striking Taylor, Carter had also struck him, Carter's lawyer would not be justified in cross-examining Williams on this because Williams denied on the stand that he made that statement. A single attorney for Carter could have done no more than did joint counsel who had stricken from the record Officer Sanich's statement that Williams "indicated" that Carter robbed Taylor.

Employing hindsight and searching the record (*People* v. *George,* 259 Cal.App.2d 424, 432 [66 Cal.Rptr. 442]) we are unable to find, under all the circumstances of this case, any

substantial conflict of interest and any reason why the court should have *sua sponte* appointed separate counsel.

2. Extrajudicial statements.

■ Carter complains of Officer Sanich's testimony that in a conversation at the police station Williams, although admitting that he fought with Taylor, told him that Carter also hit Taylor.

*Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620] cited by Carter, is not applicable as to Carter. It holds that the right to confrontation of witnesses forbids the prosecution from introducing into evidence at a joint trial the confession of defendant when the confession incriminated the other joint defendant. But here Williams took the stand, giving Carter the right to confront and cross-examine him. (See *Santoro* v. *United States* (9th Cir. 1968) 402 F.2d 920.) Moreover, although Carter had the right to cross-examine Williams, it would have been poor policy to do so in view of Williams' denial of making such a statement to the officer.

■ As before stated, Sanich testified that Carter told him "I didn't do it. Williams did it." It was not clear from the record whether Carter was talking about the assault on Taylor or the robbing of Taylor. If it were the former, no harm was done Williams because Williams testified that he was the one fighting with Taylor. If the statement referred to the robbery, then under *Bruton* v. *United States, supra,* 391 U.S. 123 [20 L.Ed.2d 476], the statement was inadmissible against Williams, as he had no opportunity to cross-examine Carter, the latter not having taken the stand.[2] We seriously question whether the statement, in view of its ambiguity and Williams' own testimony of his participation in the affray, added much in the way of inculpatory effect as to the robbery.

However, the error in admitting the statement was of the type to which the harmless error test of *Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 710, 87 S.Ct. 824] is applicable. In view of the strong direct evidence of joint participation in the robbery, as testified to by Mrs. Pray, and the evidence of the division of the loot between the defendants, as testified to by Officer Sanich, the statement in question was beyond a reasonable doubt harmless. (See *Harrington* v. *California*, 395 U.S. 250 [23 L.Ed.2d 284, 89 S.Ct.

---

[2]*Bruton, supra,* applies here as it was held to apply retroactively in *Roberts* v. *Russell*, 392 U.S. 293 [20 L.Ed.2d 1100, 88 S.Ct. 1921].

1726]; *People* v. *Flores* (1968) 68 Cal.2d 563, 568 [68 Cal. Rptr. 161, 440 P.2d 233].)

3. Evidence sufficient.

■ In view of Mrs. Pray's testimony of the joint attack on Taylor by defendants, that she saw Carter rifling Taylor's pockets, and that he kept his hand clenched as he returned to the bar, Officer Sanich's testimony that he saw defendants handling $3 in bills, the amount which Taylor said was missing, and Taylor's statement in the presence of both defendants that they robbed him, the evidence is sufficient to show at least that Williams aided and abetted Carter in the theft.

4. Failure to instruct.

■ No instruction was requested on included offenses but Williams contends that the court should have instructed *sua sponte* on simple assault as a lesser included offense. It is true that when the evidence warrants it, a defendant charged with robbery may be found guilty of simple assault. (*People* v. *Duncan* (1945) 72 Cal.App.2d 423, 426 [164 P.2d 510]; *People* v. *Driscoll* (1942) 53 Cal.App.2d 590, 593 [128 P.2d 382].)

"The demarcation between trials demanding an instruction *sua sponte* and those interposing a defense request as a precondition is drawn in *People* v. *Wade* (1959) 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116]: '. . . In determining what instructions a trial court is required to give without request, the rule is usually stated to be that the court has a duty to give instructions on the general principles of law governing the case, even though not requested by the parties, but it need not instruct on specific points developed at the trial unless requested.

" 'The rule seems undoubtedly designed to promote the ends of justice by providing some judicial safeguards for defendants from the possible vagaries of ineptness of counsel under the adversary system. Yet the trial court cannot be required to anticipate every possible theory that may fit the facts of the case before it and instruct the jury accordingly. The judge need not fill in every time a litigant or his counsel fails to discover an abstruse but possible theory of the facts.

" 'The most rational interpretation of the phrase "general principles of law governing the case" would seem to be as those principles of law commonly or closely and openly connected with the facts of the case before the court.' " (*People* v. *Crawford* (1968) 259 Cal.App.2d 874, 877 [66 Cal.Rptr. 527].)

In *People* v. *Allison* (1966) 245 Cal.App.2d 568 [54 Cal. Rptr. 148], petition for hearing denied by the Supreme Court, the defendant was convicted, among other offenses, of assault to commit rape. The defendant contended that the court *sua sponte* should have instructed regarding this count on the included offense of simple assault. The court held that the evidence in the case admitted only ''of one or two conclusions —either appellant assaulted Mrs. H with intent to commit rape, or appellant's overtures were entirely devoid of criminal intent.'' (P. 574.) So, in the instant case under the standard of *People* v. *Wade*, 53 Cal.2d 322 [1 Cal.Rptr. 683, 348 P.2d 116], the trial court did not have to give the instruction on assault *sua sponte*. According to any objective view of the evidence the case seemed to call for a verdict of acquittal or one of second degree robbery. Thus, if either defendant wanted to give the opportunity of a compromise verdict of simple assault, he should have requested it. The failure to instruct on simple assault was not error.

Particularly is this so in view of the court's instruction: ''The evidence in this case is such that, *as a matter of law,* it presents no question as to the degree of the crime charged, and I instruct you that *you must find the defendants* either not ·guilty of the offense charged against them, or guilty of robbery in the second degree.'' (Italics ours.) Defendants did not object to this instruction. An instruction that the defendants could be found guilty of simple assault would be completely incompatible with this instruction.

This could very well have been a situation in which in view of the court's favorable instruction, defense counsel did not want to give the jury an opportunity of compromising on the offense.[3]

▮ ▪ Williams contends that the trial court also should have instructed *sua sponte* that the jury should have viewed with distrust the testimony of Officer Sanich concerning Car-

[3]E.g., *People* v. *Phillips* (1966) 64 Cal.2d 574, 580-581 [51 Cal.Rptr. 225, 414 P.2d 353] (fn. 4); *People* v. *Jones* (1965) 232 Cal.App.2d 379, 390 [42 Cal.Rptr. 714]; see also *People* v. *Allison, supra,* 245 Cal.App.2d 568, 575, where the court was considering defense counsel's competency. The court said: ''[I]t cannot be said that counsel's failure to request such an instruction [lesser included offense of simple assault] shows any delinquency of representation on his part since it seems to have been appellant's contention throughout that he had committed no act which was in any way punishable or reprehensible and the very requesting of an instruction on a lesser included offense might well have been deemed by appellant to have been against his interests in that it might in effect appear that he was asking for the conviction of a lesser crime.''

ter's spontaneous declaration that he "didn't do it. Williams did it."

Defendant fails to supply any authority in support of this contention. He refers to CALJIC No. 829 and section 2061, subdivision 4, of the Code of Civil Procedure, then in effect, which deal only with testimony of an accomplice and authorities construing that section. Inasmuch as Carter did not testify and Williams' testimony exculpated Carter, this instruction would not be required for Williams and would have been detrimental to Carter.

Moreover, we find no authority requiring the trial judge *sua sponte* to instruct that a witness' testimony concerning an accusatory statement made to the witness by one codefendant in the presence of the other codefendant must necessarily be viewed with distrust.

Assuming, however, that such an instruction is required, applicable here is the rule set forth in *People* v. *Hamilton* (1948) 33 Cal.2d 45, 51 [198 P.2d 873], concerning a court's failure to instruct the jury to view with caution the testimony of any witness which purports to relate to an oral *admission* of a defendant: "If it cannot be said that, under correct instructions, a different verdict would have been improbable, the erroneous ruling constitutes a miscarriage of justice within the meaning of the constitutional provision" (former Const., art. VI, § 4½, now § 13).

There being no miscarriage of justice here, the judgment is affirmed.

Regan, J., concurred.

FRIEDMAN, Acting P. J.—I dissent. Applying the test of later constitutional developments in criminal law to this 1962 trial, I believe that the judgment should be reversed as to both defendants. The combination of a joint trial and representation by a single attorney enforced shallow and ineffectual cross-examination and deprived both defendants of their Sixth Amendment right of confrontation.

During the prosecution's case in chief, Officer Sanich testified to a statement made by Carter at the scene of the arrest: "I didn't do it. Williams did it." Although the statement does not identify "it" as the robbery or the fight, Sanich testified that Carter was referring to the robbery. The statement was elicited by defense counsel on cross-examination. Sanich also testified that Williams, although present during Carter's accusation, remained silent.

Sanich was later called as a prosecution rebuttal witness. On direct examination he testified to a conversation with Williams at the "detective division." In response to a leading question by the prosecutor, he testified that Williams denied personal involvement in the robbery but had accused Carter of the robbery. A few minutes later he said that Williams had "indicated" Carter's commission of the robbery but didn't state it outright. The court struck Sanich's second statement, but not the first. Sanich then testified to an extrajudicial statement made by Carter, as follows: "Yes, Carter stated Williams had robbed him [i.e., the victim]."

Inescapable impact of .Sanich's testimony upon the jury was that each defendant had made an extrajudicial statement accusing the other of the robbery. On this direct appeal we must appraise the impact of these extrajudicial accusations in the light of constitutional developments occurring after the 1962 trial. (*People* v. *Charles,* 66 Cal.2d 330, 334 [57 Cal. Rptr. 745, 425 P.2d 545].)

Jointly tried defendants are denied the right to the effective assistance of counsel where, notwithstanding a conflict of interest, they are represented by a single court-appointed attorney. (*People* v. *Chacon,* 69 Cal.2d 765, 774 [73 Cal.Rptr. 10, 447 P.2d 106].) Here, each defendant had uttered an extrajudicial accusation against the other. Since each defendant's out-of-court statement exculpated himself but inculpated the other, the single attorney had to restrain himself in cross-examining the witness, lest he destroy the exculpatory along with the inculpatory phase of the statement. Sanich was especially vulnerable to cross-examination because at the preliminary examination he testified that both defendants had denied participation in the robbery, then, at the trial, stated he did not recall these denials. As pointed out in *People* v. *Donohoe* (1962) 200 Cal.App.2d 17, 28 [19 Cal.Rptr. 454], separate counsel for each defendant might have employed tactics for the best interest of his own client including vigorous assault on the other defendant. The extrajudicial accusations created a conflict of interest and one attorney could not give effective representation to both these defendants. (See also, *People* v. *Lanigan,* 22 Cal.2d 569, 576-577 [140 P.2d 24, 148 A.L.R. 176] ; *People* v. *Odom,* 236 Cal.App.2d 876, 878-879 [46 Cal.Rptr. 453].)

A necessary implication of *Bruton* v. *United States,* 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620], also demands reversal. *Bruton* holds that the conviction of a defendant at a

joint trial must be set aside where he is incriminated by the admission in evidence of his codefendant's confession. Infringement of the Sixth Amendment right of confrontation is the basis of the rule. In all logic the rule applies just as forcefully to an extrajudicial accusation by one codefendant against another.

In the light of constitutional hindsight, these defendants suffered a serious deprivation of confrontation by being subjected to a joint trial. If Carter had been tried alone, he could have chosen not to testify, thus avoiding impeachment. Under those circumstances, Williams' extrajudicial accusation against him would have been inadmissible hearsay. (*People* v. *Johnson,* 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111].) If Williams had been tried alone, he could have adopted a similar tactic.

Although there is much to be said for the contention that the declarant's presence in court and his current availability for cross-examination satisfy the confrontation requirement, *People* v. *Johnson, supra,* does not permit that argument. (Cf., *People* v. *Pierce,* 269 Cal.App.2d 193, 202 [75 Cal.Rptr. 257].)

The constitutional errors (however retroactive) infecting the trial can be classed as harmless only by the impermissible process of assaying the incriminating quality of the remaining evidence after the constitutionally invalid evidence has been subtracted from the record. In measuring prejudice we must view the whole record, "the entire picture of the defendant put before the jury." (*People* v. *Bassett,* 69 Cal.2d 122, 138 [70 Cal.Rptr. 193, 443 P.2d 777]; *People* v. *Hopper,* 268 Cal.App.2d 774, 778 [75 Cal.Rptr. 253].) When the record is viewed in its entirety, there is—at the minimum—a reasonable possibility that the invalid evidence influenced the verdict. I would reverse.

Appellants' petitions for a hearing by the Supreme Court were denied October 22, 1969. Mosk, J., did not participate therein.